Patty A. Ferguson-Bohnee (SBN 020996)
Patty.Ferguson@SacksTierney.com
Judith M. Dworkin (SBN 010849)
Judith.Dworkin@SacksTierney.com
Joe Keene (SBN 032623)
Joe.Keene@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600

Ethel B. Branch (No. 026717)
ebranch@nndoj.org
Paul Spruhan (No. 02513)
pspruhan@nndoj.org
Navajo Nation Dept. of Justice
P.O. Drawer 2010
Window Rock, Arizona 86515
Telephone: (928) 871-6210
Facsimile: (928) 871-6177
Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Navajo Nation, a federally recognized Indian Tribe; Joyce Nez, an individual; Denise Johnson, an individual; Ashley Atene, Sr., an individual; Irene Roy, an individual; Bonnie Tsosie, an individual; and Dale Smith an individual, | No. |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| Michele Reagan, in her official capacity as Secretary of State for the State of Arizona; Edison J. Wauneka, in his official capacity as Apache County Recorder; Angela Romero in her official capacity as Apache County Elections Director; Doris Clark in her official capacity as Navajo County Recorder, Rayleen Richards, in her official capacity as Navajo County Elections Director; Mark Mayrand in his official capacity as Coconino County Elections Director; and Patty Hansen, in her official capacity as Coconino County Recorder, | |
| Defendants. | |

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2269162.v3

## I.    Introduction

Plaintiff Navajo Nation, on its own behalf and on behalf of its members, Joyce Nez, an individual, and Ashley Atene, Sr. an individual (collectively the "Plaintiffs"), under Federal Rule of Civil Procedure 65(b), respectfully ask this Court to enter a temporary restraining order/injunction prohibiting Defendant Michele Reagan, in her official capacity as Secretary of State for the State of Arizona, the County Recorders (Apache, Navajo, and Coconino), and the State's County Election Directors (Apache, Navajo, and Coconino), and their officers, managers, agents, servants, affiliates, and employees (collectively the "Defendants"), from finalizing the counting of votes until such time as the Plaintiffs and similarly situated Navajo voters whose early ballots were disqualified have the right to cure in this  the November 6, 2018 election ("Election"). As the Supreme Court has held, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live," and "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964).  In pursuit of this right, the Navajo Nation requests emergency injunctive relief which orders the Defendants to allow Navajo voters an opportunity to cure deficiencies in their early ballot and Plaintiffs request this TRO to prevent irreparable harm to Navajo Nation voters wherein they have been denied the fundamental right to have their votes counted.

## II.    Factual Background

Six Arizona counties are subject to the Voting Rights Act ("VRA"), Section 203, for Indian languages: Apache, Coconino, Gila, Graham, Navajo, and Pinal and must provide all election materials, including assistance and ballots, in the language of the applicable language minority group.[1]  Compl. ¶ 87.  This includes the Navajo language in Apache, Coconino, and Navajo Counties.  *Id.*  "Over 70% of the voting age population on the Reservation speak a language other than English." Compl. ¶ 2.  Despite these facts, no

---

[1] Voting Rights Act Amendments of 2006, Determinations under Section 203, 81 See. Reg. 87532, 87533 (Dec. 5, 2016).

Navajo translators were provided to give guidance to the Navajo Nation members in the preparation of their early ballots for the Election.  *Id.*  The Arizona Election Manual only requires that instructions be given in English and Spanish.  Compl. ¶ 89.

To prepare for the Election, "on August 8, 2018, Russell Begaye, President of the Navajo Nation, sent requests for additional early voting sites to the recorders of Apache, Coconino and Navajo Counties."  Compl. ¶ 92.  "He informed the respective recorders that the Nation would staff the locations and assist in obtaining HAVA [Help America Vote Act] funds for its operations."  *Id.*  "He asked that they respond by August 17, 2018, so that the Navajo Nation could assist the counties."  *Id.*  Establishing early voting sites was vitally important for the Nation, because many Navajo Nation members live in remote regions and it is a financial burden for these members to exercise their votes.  *See* Compl.¶ 29; Compl., Ex. 4, Johnson Decl. ("We are in a remote area, so it is a financial burden to vote."); *See* Compl. ¶ 31; Compl. Ex. 6, Tsosie Decl. ("It is a financial burden for me to travel to [voting sites] Fort Defiance, Arizona or to Chinle, Arizona.").

"On August 20, 2018, Defendant Patty Hansen sent a memorandum to President Begaye denying his request for additional early voting sites."  Compl. ¶ 93, Compl. Ex. 10. "She claims that Coconino County recently entered into a settlement agreement with the Department of Justice that requires all early voting sites established after the effective date of the agreement be handicapped accessible." *Id.*  "The Agreement would allow the County to use current non-compliant facilities for the 2018 elections but prohibited them from establishing any new non-compliant facilities." *Id.* "The County did agree to accept assistance from the Navajo Nation in obtaining additional HAVA funding." *Id.*

"On August 23, 2018, Defendant Secretary of State notified President Begaye that Coconino County Recorder's statement that the Secretary of State would not make HAVA funding available to enhance their election security was incorrect." Compl. ¶ 94, Compl. Ex. 11.

"On September 10, 2018, Defendant Doris Clark notified the Navajo Nation that its request for additional early voting sites on the Reservation was denied, because of the

2269162.v3

County's interest in ballot security." Compl. ¶ 95, Compl. Ex. 12. As shown above, the counties denied the Navajo Nation's request for additional early voting sites. *See* Bret Healy Declaration ("Healy Decl."), ¶ 8, attached hereto as Ex. 1.

Despite the denial of the early voting sites by the Defendants, Four Directions, a 501(c)(4) corporation who works with the Navajo Nation, engaged in early vote efforts on the Navajo Reservation starting on Monday, October 15, 2018. Healy Decl. ¶ 10. The "Apache County early vote offices in Chinle and Fort Defiance were closed each day from noon until 1 PM Navajo Nation time." Healy Decl. ¶ 11. Four Directions reached out to the Apache County Recorder in an effort to make lunch hours early voting available to Navajo Nation voters, but the Apache County Recorder declined assistance from Four Directions and would not make the lunch hour available except for the last two Fridays at the Fort Defiance location. Healy Decl. ¶ 12-14.

"On November 6, 2018, the State of Arizona held its General Election. Over 100 votes cast by members of the Navajo Nation residing in the Counties of Apache, Navajo, and Coconino were not counted, because they did not sign the envelope containing the early ballot or because the signatures on the envelopes did not match." Compl. ¶ 2. These Navajo Nation voters were not told that they had to complete the ballot affidavits form on the envelope, and these members thought they had lawfully cast a ballot for the Election. *See* Compl. ¶ 26; Compl. Ex. 1, Nez Decl ("Nez Decl."). If these voters had resided in Maricopa County, the officials there would have sent the ballot "back to the voter along with a letter explaining why it was returned and a postage paid envelope for the voter to send it back signed." *See* Maricopa County Recorder Website, *Frequently Asked Questions*, available at https://recorder.maricopa.gov/site/faq.aspx. The Navajo Nation voters never received anything in the mail stating their ballot had a mistake. *See* Nez Decl. ¶11. In fact, one Navajo Nation member turned in his early ballot at the Kayenta polling place and asked if he was supposed to sign the ballot, and the election official told him "no." *See* Compl. ¶27, Compl. Ex. 2, Atene Decl. ("Atene Decl.") ("I asked at the polling place if I was supposed to sign my ballot and the lady said no."). Other Arizona voters who had

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

4

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

ballot mistakes were "allowed until November 14, 2018, to correct their errors." Compl. ¶ 89. In a lawsuit filed in Maricopa County for voting violations, *Maricopa County Republican Party v. Michele Reagan, et al.*, CV2018-013963, the Superior Court issued an Order that stated that County Recorder Defendants must permit voters to "cure early ballots until 5:00 p.m. on Wednesday, November 14, 2018." Order, attached hereto as Ex. 2.  This Order apparently did not cover the Tribal Members who properly filled out the ballot but failed to sign the envelope as Four Directions worker Jennifer Crow was specifically told Navajo Nation members who did not sign their envelopes could not cure their ballots.  *See* Ex. 1 at Jennifer Crow Declaration ("Crow Decl.") ¶ 25.

To illustrate the barriers that Navajo Nation members faced in trying to cure their ballots and the utter confusion that these members faced, an encounter with the Apache County Recorder's Office shortly after the Election is worth describing. "Four Directions learned that voters in Apache County would only have until 5:00 PM on Friday, November 9, 2018 to cure ballots . . . ."  Healy Decl. ¶ 15.  Four Directions learned that voters who wanted to cure should call 928-337-7515.  *Id.*  Four Directions then informed their team leaders to reach out to Navajo Nation members whose votes were not counted and urged these members to call the 7515 number in order to cure their ballot.  *Id.*  Navajo Nation members called the 7515 number and no one ever picked up the phone, the phone would just "ring and ring."  Healy Decl. ¶ 16.

On Friday, November 9, 2018, Navajo Nation worker Donna Semans went to the Apache County Recorder's Office to request help in allowing Navajo Nation members to cure their early votes. *See* Ex. 1 at Donna Semans Declaration ("Semans Decl.") ¶ 6. To her surprise, the Apache County Recorder's Office was closed on this day, and Donna called the Recorder's Office for 45 minutes before finally speaking with someone from this office. Semans Decl. ¶ 7.  A lady named Geneva, the Registration Supervisor, finally spoke with Donna and Donna asked Geneva how the Navajo Nation members could get their votes cured. Semans Decl. ¶ 14.  Geneva stated that the members could just call her.  Semans Decl. ¶ 15.  Donna told Geneva that she had contacted 13 Navajo Nation members who had

2269162.v3

vote discrepancies with their ballots and these people had tried to call but no one answered the phone. Semans Decl. ¶ 16. Geneva asked Donna what number she had the 13 people call, and Donna said the number she had been told to call, the 7515 number. Semans Decl. ¶ 20. Geneva then asked Donna who told her that information, and said that information did not come from her office. Semans Decl. ¶ 21. Donna told Geneva she wanted to speak with someone in person and Geneva said she'd send her Chief Deputy Recorder to meet with Donna in 20 minutes. Semans Decl. ¶ 22. The Chief Deputy Recorder never showed up. Semans Decl. ¶ 23. Apache County officials did not meet with Donna until November 13, 2018, when she finally secured "the list of voters needing assistance to cure their ballots." Semans Decl. ¶ 26.

As shown above, not only did Navajo Nation members never receive any notifications that their early ballots had mistakes, but Defendants created obstacles to the Plaintiffs' efforts to cure. The Defendants' failure to allow Navajo Nation members to cure their ballots, deprived Plaintiffs of their opportunity to cast an early ballot compared to other Arizona citizens. *See* Compl. ¶ 109. The denial of the ability of the Navajo Nation members to vote in the Election compared to other Arizona citizens denied the Navajo Nation members equal protection under the law.

**III.   Legal Standard**

Immediate injunctive relief is appropriate here because Plaintiffs can establish all four requisite factors this court must consider. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Injunctive relief under Fed. Civ. P. 65(b) is appropriate where Plaintiff can establish that it:

> (1) is likely to succeed on the merits; (2) is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.

*Winter*, 555 U.S. at 20.

For the reasons described below, Plaintiffs meet the *Winter* standard.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2269162.v3

**IV.    Argument**

    **a.    Plaintiff is likely to succeed on the merits.**

"Voting is a fundamental right subject to equal protection guarantees under the Fourteenth Amendment." *Idaho Coal. United for Bears v. Cenarrusa*, 342 F.3d 1073, 1076 (9th Cir. 2003)  "There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014).  Indeed,  the right "to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, [and] any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.  *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).  Like the United States Constitution, the Arizona Constitution, Art. 2, § 21, provides for equal protection under the law for voting and states that "[a]ll elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

The Supreme Court holds that the Constitution protects not only the right to vote, but also the counting of the votes. "It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote . . . *and to have their votes counted*." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (internal citation omitted) (emphasis added). "The right to vote includes the right to have one's vote counted on equal terms with others." *League of Women Voters of Ohio v. Brunner,* 548 F.3d 463, 476 (6th Cir. 2008). And the Supreme Court holds that the process of counting votes is important and a State may not value certain voters over others. The Supreme Court notes:

> The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.

*Bush v. Gore*, 531 U.S. 98, 104–05 (2000). "An individual's right to vote . . .is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living on other parts of the State.' *Reynolds v. Sims*, 377 U.S. 533, 568 (1964).

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2269162.v3

Here, the Navajo Nation members' right to vote and have their vote counted was "unconstitutionally impaired" by the Defendants who (1) refused to open early voting sites on the vast Reservation; (2) refused to provide translators proficient in the Navajo language to assist Navajo Nation members with their early voting; (3) refused to count early voting ballots by Navajo Nation members because the envelopes for the ballots were not signed or mismatched; and (4) did not allow Navajo Nation members the ability to cure their ballots like other Arizona citizens. Plaintiffs have shown with concrete evidence from the Plaintiffs' declarations that Navajo Nation members' votes were not being counted, *See* Nez Decl. ¶ 9; Atene Decl. ¶ 9, Compl. ¶¶ 26, 27 the Defendants not providing translators to Navajo Nation early voters, *See* Compl. ¶ 2, the Defendants refusing to open early voting sites on the Reservation, *See* Healy Decl. ¶ 8, and the lack of an opportunity by Navajo Nation members to cure their ballots. *See* Nez Decl. ¶ 11-14; Healy Decl. ¶ 23.  Thus, the Plaintiff is likely to succeed on the merits of its claims alleging violations of the Fourteenth Amendment, the First Amendment, 42 U.S.C. 1983, the VRA, and the Arizona Constitution. A granting of a temporary restraining order is warranted. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.") (internal quotations omitted).

> i.   **Plaintiffs are likely to prevail on their VRA claims because Defendants violated Section 2 of the VRA, by providing "less opportunity" for Navajo Nation members to vote, as compared to others.**

The VRA states that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a). The VRA also protects people who are "member[s] of a language minority group." 52 U.S.C. § 10303(f)(2).  Indians are recognized as a language minority group under the VRA and are a protected class under the VRA. Section 4(f)(4) of the VRA provides in relevant part:

2269162.v3

> Whenever any State of political subdivision [subject to the bilingual electoral requirements] . . . provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable language minority group as well as in the English language.

52 U.S.C. § 10303(f)(4). Section 2 of the VRA provides that it is a violation of the VRA if,

> based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have *less opportunity than other members of the electorate* to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b) (emphasis added).

The Supreme Court holds that the crucial question in a Section 2 claim "is whether the use of a contested electoral practice or structure results in members of a protected group having *less opportunity* than *other members of the electorate* to participate in the political process and to elect representatives of their choice." *Thornburg v. Gingles*, 478 U.S. 30, 63 (1986) (emphasis added).

The Defendants' actions have violated Section 2 of the VRA because they have created "less opportunity" for Navajo Nation members' to have their votes be counted than "other members of the electorate." The Defendants' failure to provide translators proficient in the Navajo language, a violation of VRA § 4(f)(4), which lead to the errors in the early voting process and failure to allow Navajo Nation members' the ability to cure deficiencies with their ballots, created hardships for the Navajo Nation members and effectively denied them the equal right to vote afforded to other Arizona citizens.

As shown in the Complaint, the Defendants never provided translators to Navajo Nation members who exercised their early voting rights, despite 70% of the population speaking a language other than English. *See* Compl. ¶ 2. A language minority group is a protected class under the VRA and the Defendants had an obligation to provide translators and materials in the Navajo language. *See* VRA, 52 U.S.C. § 10303(f)(4) (the state "shall provide [election forms] in the language of the applicable language minority group as well

as in the English language."). Federal courts hold that "Section 2 claims may be brought to challenge election officials' failure to provide language assistance." *United States v. Berks Cty., Pennsylvania*, 277 F. Supp. 2d 570, 581 (E.D. Pa. 2003).

The limited early voting sites on the Reservation reduced the opportunities of Navajo Nation members to remedy any early ballot voting problems. *See* Compl. Ex. 12, Navajo County Early Voting Sites; Coconino County Early Voting Sites attached as Ex. 3; Apache County Recorder's Office Early Voting attached hereto as Ex. 4.  The lack of early voting sites created additional hardship for early voters to cure any mistakes Navajo Nation members made when early voting. *See* Compl. ¶ 12.  Furthermore, the few early voting sites that were available only stayed open for a limited time. *See* Smith Decl. ¶ 14-16 (stating the Kayenta early location was open only 10 hours total, Holbrook's early location was open for 162 hours total, and there was no in person voter registration office at the Kayenta location for the last 30 days before the close of voter registration for the Election.). As Justice Scalia has stated, if "a county permitted voter registration for only three hours one day a week, and that made it more difficult for blacks to register than whites, blacks would have less opportunity '*to participate* in the political process' than whites, and §2 would therefore be violated." *Chisom v. Roemer*, 501 U.S. 380, 408 (1991) (Scalia, J., dissenting) (emphasis in original).

The lack of communication by Defendants to Navajo Nation members that there were problems with their ballots effectively disenfranchised Navajo Nation voters. As Navajo Nation member Joyce Nez stated, "I was never advised by county officials that there were problems with my ballot." Nez Decl. ¶ 11.  This treatment is unlike voters in Maricopa County wherein the officials there would send back the ballot "to the voter along with a letter explaining why it was returned and a postage paid envelope for the voter to send it back signed." *See* Maricopa County Recorder Website, FAQ.

Navajo Nation members were also treated differently immediately after the election in attempting to cure the deficiencies with their ballots. Donna Semans, a Four Directions worker, attempted to acquire help from the Apache County Recorder's Office to cure

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2269162.v3

ballots on Friday, November 9, 2018, only to find the Recorder's Office closed. Semans Decl. 7. Then when she finally spoke with a supervisor, this supervisor gave her no help at all by having her wait for a person that never showed up. *See* Semans Decl. ¶ 23 (I "waited to meet with the chief deputy recorder, but no one came out to meet with me nor contacted me in any way."). Other Arizona County Recorder Offices were open on Friday and actively helped voters remedy any ballot issues.

As shown above, the disparate treatment of early voting activity for the Navajo Nation compared to the electorate at large violates Section 2 of the VRA and is unconstitutional.

> **ii.   Plaintiffs are likely to prevail on their Equal Protection claims because the Defendants engaged in "disparate treatment" of Navajo Nation voters.**

The Supreme Court holds that the right to vote is "implicit in our constitutional system" and grants the Plaintiffs the right "to participate in state elections on an equal basis with other qualified voters." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 36 n. 78 (1973). The Supreme Court notes that the equal protection clause "applies as well to the manner of its [voting's] exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000).

The Defendants' actions disadvantaged Navajo Nation members and did not allow them the same opportunities to cast their ballots as other Arizona citizens.  As shown above, the Defendants refused to open early voting sites on the Reservation, refused to provide Navajo language translators with early voting, and refused to provide an opportunity to cure irregularities in the early ballots. In contrast, Arizona citizens in Maricopa County were allowed to mail in a new ballot if they did not sign their original early ballot.  Over 100 Navajo Nation members' ballots were uncounted because the envelope was not signed or their signatures on their ballots were mismatched. *See* Compl. ¶ 2.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2269162.v3

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

iii.   **Plaintiffs are likely to prevail on their Equal Protection claims because the Defendants imposed an "undue burden" on Navajo Nation voters by not opening early voting sites, requiring them to sign the ballot envelope, and imposing obstacles on the ability to cure a ballot.**

The Defendants' actions to impose obstacles to cure irregularities in the early ballot, such as the Friday, November 9 closure of the Apache County Recorder's Office, violate the Plaintiffs' constitutional rights. When a State imposes a burden on the right to vote, this Court must weigh:

> [1] the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against [2] the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration [3] the extent to which those interests make it necessary to burden the plaintiff's rights.

*Democratic Nat'l Comm. v. Reagan*, 904 F.3d 686, 702–03 (9th Cir. 2018) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). In evaluating the severity of the burden, "courts may consider not only a given law's impact on the electorate in general, but also its impact on subgroups, for whom the burden, when considered in context, may be more severe." *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 n. 2 (9th Cir. 2016), *cert. denied sub nom. Pub. Integrity All., Inc. v. City of Tucson, Ariz.*, 137 S. Ct. 1331, 197 L. Ed. 2d 518 (2017).

First, the the court considers "whether the law has a heavier impact on subgroups," if the "plaintiff adduces evidence sufficient to show the size of the subgroup and quantify how the subgroup's special characteristics makes the election law more burdensome." *Democratic Nat'l Comm. v. Reagan*, 904 F.3d 686, 703 (9th Cir. 2018). Plaintiffs have provided significant evidence that Navajo Nation voters are not as proficient in the English language as other voters and therefore may require explanation regarding the need for the signature on the early voting envelope in which the ballot is placed. Over 70% of the population on the Navajo reservation speaks a language other an English, *See* Compl. ¶ 2, and "over 18% of individuals over the age of five speak English less than very well." Compl. ¶ 88. Because Navajo Nation voters do not understand English as well as the voting

12

electorate at large, they were more likely to fail to understand the exact procedures for submitting an early ballot, more likely to submit the ballot without signing the envelope. The lack of translators at early voting locations and Defendants' failure to notify Navajo Nation voters that their early ballots were deficient, *See* Nez Decl. ¶ 11, and the limited times and locations to cure the deficiencies are evidence of Plaintiffs' injury in trying to exercise their voting franchise.  As shown in the declarations submitted, the Navajo Nation did not receive the list of voters whose ballots would be counted for Apache County until Tuesday, November 13, 2018. *See* Semans Decl. ¶ 26.

Second, the court considers whether the State's justifications is sufficient to burden the plaintiff's rights.  *Democratic Nat'l Comm. v. Reagan*, 904 F.3d 686, 703 (9th Cir. 2018). This step "involves a balancing and means-end fit framework . . . the severity of the burden dictates the closeness of the fit required, and the more severe the burden, the more compelling the state's interest must be." *Id.* While Arizona has a strong interest in preserving the integrity of its elections and has "the power to impose voter qualifications," *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972), the Navajo Nation members have a "fundamental political right" to vote.  *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972)). Furthermore, the "burden" imposed by Arizona here has to be considered within the subgroup of the Native Americans, including Navajo Members, who have faced decades of discrimination in voting which means any limitation placed on voting "may be more severe." *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 n. 2 (9th Cir. 2016), *cert. denied sub nom. Pub. Integrity All., Inc. v. City of Tuczon, Ariz.*, 137 S. Ct. 1331, 197 L. Ed. 2d 518 (2017). The State's justification for refusing to open early voting sites staffed with Navajo translators and the failure to assist Navajo voters in curing irregularities on their ballots, pales in comparison with the "fundamental right" of Navajo Nation members to vote and have their votes counted. As of this filing, the State of Arizona is continuing to count thousands of votes and Arizona law allows the canvassing or verifying of votes up to twenty days past an election. *See* A.R.S. § 16-642 ("The governing body holding an election shall meet and canvass the election not less than six days nor

SACKS TIERNEY P.A. ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

13

more than twenty days following the election."). Requiring the Defendants to extend the time for Navajo voters to cure irregularities and for the Defendants to count the additional Navajo Nation members' votes poses little burden on the Defendants and does not impose any substantial costs.

**b. Absent a restraining order, Plaintiff will suffer irreparable harm by not having their votes counted.**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 37 (1976)); *See also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote therefore constitutes irreparable injury."). This Court holds that "it is clear that abridgement of the right to vote constitutes irreparable injury. *"Arizona Democratic Party v. Arizona Republican Party*, No. CV-16-03752-PHX-JJT, 2016 WL 8669978, at *11 (D. Ariz. Nov. 4, 2016). "Because there can be no 'do-over' or redress of a denial of the right to vote after an election, denial of that right weighs heavily in determining whether plaintiffs would be irreparably harmed absent an injunction." *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016).

As shown in the Complaint and the declarations submitted, over 100 Navajo Nation members' votes "were not counted" because they did not sign the outside envelope of their ballot or their early ballots had a mismatch of signatures. *See* Compl. ¶ 80. These Navajo Nation members cannot redress this mistake and exercise their voting franchise absent injunctive relief by this Court. The denial of the right to vote by Defendants constitutes irreparable injury to the Navajo Nation members which warrants the issuance of injunctive relief.

**c. The balance of equities tips in Plaintiff's favor.**

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S. Ct. 5, 7, 166 L. Ed. 2d 1 (2006). But because Arizona is still counting votes in many precincts, any harm from

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

14

having to tally additional Navajo Nation member votes is *de minimis*. *See* A.R.S. §16-642 ("The governing body holding an election shall meet and canvass the election not less than six days nor more than twenty days following the election.").The Supreme Court is clear that "[c]ountering the State's compelling interest in preventing voter fraud is the plaintiffs' strong interest in exercising the 'fundamental political right' to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S. Ct. 5, 7, 166 L. Ed. 2d 1 (2006) (quoting *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972)).

Here, the balance of equities tips strongly in favor the Navajo Nation members because these members are exercising their "fundamental political right to vote." Indeed, currently in Apache County, for Ganado School Board #20, there is only a *three vote difference* between the potential candidates for school board. *See* Apache County Website, *2018 Midterm Unofficial Election Results*, available at https://www.co.apache.az.us/elections/apache-county-2018-election-results/. Thus, the ability of Navajo Nation members to participate in the selection of their political leaders by having their votes counted is of vital importance and outweighs the harms suffered by the State. *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) ("There is no right more basic in our democracy than the right to participate in electing our political leaders.").

### d. Public interest.

The Ninth Circuit Court of Appeals holds that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)(quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)). As shown above, the Plaintiffs have brought this suit seeking injunctive relief to exercise their constitutional right to vote and have their votes counted. The public interest favors an injunction.

### V.   Conclusion

For the foregoing reasons, the Plaintiffs respectfully request that this Court issue a temporary restraining order/injunction ordering Defendants to permit Navajo voters the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2269162.v3

1  opportunity to cure the deficiencies in the early ballots and to count the ballots cast in the

2  Election.

3          DATED this 20th day of November, 2018.

4                                          SACKS TIERNEY P.A.

5

6                                  By:   *s/ Patty A. Ferguson-Bohnee*

7                                         Patty A. Ferguson-Bohnee
                                          Judith M. Dworkin
                                          Joe Keene

8                                         and

9                                         Ethel B. Branch

10                                        Paul Spruhan
                                          NAVAJO NATION DEPARTMENT OF JUSTICE

11                                        *Attorneys for the Navajo Nation*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2269162.v3

1

<u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that on November 20, 2018, I electronically transmitted the

3

foregoing **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

4

**SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING**

5

**ORDER** to the Clerk's Office using the CM/ECF System for filing.

6

7

8

9

10

*s/ Rebecca C. Urias*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SACKS TIERNEY** P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693