**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navajo Nation, et al., | No. CV-18-08329-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Michele Reagan, et al., | |
| Defendants. | |

Pending before the Court is an emergency motion for a temporary restraining order ("TRO") and motion to set hearing on preliminary injunction. (Doc. 2.) As discussed below, the Court will set a hearing for **Monday, November 26, 2018, at 10:00 a.m.** to address certain threshold questions concerning the TRO request and, potentially, to set a briefing and hearing schedule on that request.

A.  The Complaint

On November 20, 2018, seven plaintiffs—(1) the Navajo Nation, (2) Joyce Nez, (3) Denise Johnson, (4) Ashley Atene, Sr., (5) Irene Roy, (6) Bonnie Tsosie, and (7) Dale Smith—filed a verified complaint against the Arizona Secretary of State and certain election officials from Apache, Coconino, and Navajo Counties. (Doc. 1.) The complaint alleges three categories of election-related misconduct. First, it alleges that, in August 2018, the Navajo Nation asked election officials in Apache, Coconino, and Navajo Counties to establish additional in-person voter registration sites and early voting sites within the Navajo reservation, but the election officials rejected this request. (Doc.

1 ¶¶ 92-96, 107.) Second, it alleges that election officials in Apache, Coconino, and Navajo Counties failed to provide sufficient Navajo-language translators to assist voters during the November 2018 election. (Doc. 1 ¶¶ 14, 98.) Third, it alleges that election officials in Apache, Coconino, and Navajo Counties failed to extend an opportunity to "cure" ballot deficiencies to approximately 100 members of the Navajo Nation who failed to sign the outside of their early-voting envelopes or who provided mismatched signatures. (Doc. 1 ¶ 109. *See generally* Doc. 2 at 3 ["Defendants (i) refused the Navajo Nation's request to establish early voting sites on the Navajo Reservation . . . ; (ii) failed to provide translators at early voting sites on the Reservation who are proficient in the Navajo language; and (iii) refused to count the ballots cast by Navajo Nation Tribal Members for the 2018 election because they failed to sign their envelopes or were disqualified due to signature mismatch."].)

Count One of the complaint alleges a claim under 18 U.S.C. § 1983, for violations of Plaintiffs' rights under the 14th Amendment and the Voting Rights Act. Count Two of the complaint alleges unspecified violations of the Arizona Constitution. Count Three alleges a claim under the Voting Rights Act. Count Four alleges a claim under the First Amendment.

Much of the relief sought in the complaint is declaratory in nature—among other things, it requests that the Court declare that Defendants' "failure to provide in-person voter registration on the Reservation," "failure to provide additional early voting sites on the Reservation," "failure to provide translators for early voting Tribal Members," and "failure to count the early ballots cast by Tribal Members in the 2018 election" all constitute violations of existing law. (Doc. 1 at 24-25.) The complaint also requests an injunction requiring Defendants to establish new in-person voter registration sites and early voting sites and provide translators in future elections. (Doc. 1 at 25.) Finally, the complaint requests one category of immediate injunctive relief: "That this Court grant preliminary and permanent injunctive relief by ordering Defendants to allow Tribal Members whose ballots were excluded because of missing or mismatched signatures an

1  opportunity to remedy the inadequacy within five (5) business days of the issuance of a
2  Court Order." (Doc. 1 at 26.)

### B. The TRO Request

The complaint was accompanied by an "emergency motion for temporary restraining order and motion to set hearing on preliminary injunction." (Doc. 2.) The first sentence of the motion, however, states it is only being filed by three of the seven plaintiffs named in the complaint: (1) the Navajo Nation, (2) Joyce Nez, and (3) Ashley Atene, Sr. (Doc. 2 at 2.) It asks the Court to "enjoin[] all Defendants from rejecting ballots of voters in Navajo, Apache, and Coconino Counties who are otherwise qualified to vote in order to allow Navajo voters an opportunity to cure deficiencies in the early ballots cast in accordance with the rights of other Arizona voters" and to "toll the deadline for certifying the election results under Arizona Revised Statutes §16-648 and §16-650, until this matter can be heard, in order to ensure that all unsigned and mismatched early ballot voters are given an opportunity to correct the ballot discrepancies and their ballots are included in the submitted results." (Doc. 2 at 2-3.) It further requests that "[i]f any Defendants have already certified election results . . . that the Court direct these Defendants to allow Navajo voters an opportunity to cure the deficiencies and to certify and file corrected returns." (*Id.* at 3.)

The motion was accompanied by a memorandum of points and authorities. (Doc. 2-1.) It contends that time is of the essence because "the State of Arizona is continuing to count thousands of votes and Arizona law allows the canvassing or verifying of votes up to twenty days past an election." (Doc 2-1 at 13, citing A.R.S. § 16-642.) It further contends that "the balance of equities tips strongly in [Plaintiffs'] favor . . . [because] currently in Apache County, for Ganado School Board #20, there is only a three vote difference between the potential candidates for school board." (Doc. 2-1 at 15.)

### C. Threshold Questions

The TRO request raises several threshold issues that should be addressed before turning to the merits. First, although the complaint alleges the Navajo Nation has

standing to bring claims on behalf of its members (*see* Doc. 1 ¶ 25), the Court "has an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Here, the TRO request is for an order requiring election officials to allow a small subset of Navajo Nation members to cure deficiencies in their ballots. Courts have suggested tribes may lack standing to advance analogous claims. *See, e.g., United States v. Santee Sioux Tribe of Nebraska*, 254 F.3d 728, 734 (8th Cir. 2001) (citations omitted) ("The doctrine of parens patriae allows a sovereign to bring an action on behalf of the interest of all of its citizens. However, this doctrine is reserved for actions which are asserted on behalf of all of the sovereign's citizens. The parens patriae doctrine cannot be used to confer standing on the Tribe to assert the rights of a dozen or so members of the Tribe."); *Navajo Nation v. Wells Fargo & Co.,* 2018 WL 4608245, *13 (D.N.M. 2018) (concluding that Navajo Nation "does not have standing in its *parens patriae* capacity to bring claims that involve injuries to purely private interests"); *Navajo Nation v. Superior Court of State of Wash. for Yakima Cty.*, 47 F. Supp. 2d 1233, 1240-41 (E.D. Wash. 1999) (citations omitted) ("The governmental entity must raise claims which affect all its members, not just a select few. Nothing in the pleadings and little in the Nation's briefing support the claim the Navajo Nation is acting in its *parens patriae* capacity. The Navajo Nation has failed to prove it is acting on behalf of all of its members in order to litigate as *parens patriae*. Therefore, the Navajo Nation does not have standing . . . .").

Second, Plaintiffs' pleadings only identify one electoral race in which the requested relief could possibly change the outcome—the Ganado School Board race in Apache County, which is alleged to currently have a three-vote difference. (Doc. 2-1 at 15.) This raises the question whether Plaintiffs have adequately alleged irreparable harm against the election officials of Coconino and Navajo Counties. If not, those election officials shouldn't be swept into the TRO request—the other categories of injunctive and declaratory relief sought by Plaintiffs simply pertain to how *future* elections should be conducted and, thus, need not be resolved on an emergency basis.

Third, it is notable that many of Plaintiffs' criticisms are directed toward actions (and inaction) by county election officials that occurred weeks or months before the November 2018 election. (*See, e.g.,* Doc. 2-1 at 3-4.) Plaintiffs' pleadings do not explain why they waited until two weeks after the election to file an emergency federal lawsuit challenging that conduct, and "'[i]t is well established that in election-related matters, extreme diligence and promptness are required.' When a party fails to exercise diligence in seeking extraordinary relief in an election-related matter, laches may bar the claim." *McClafferty v. Portage Cty. Bd. of Elections*, 661 F. Supp. 2d 826, 839 (N.D. Ohio 2009) (citations omitted). Determining which (if any) of Plaintiffs' theories of liability are barred by laches[1] may be crucial in evaluating Plaintiffs' likelihood of success on the merits.

Fourth, Plaintiffs' pleadings fail to identify, with precision, the true deadline by which a TRO would need to be entered in order to be effective. Although Plaintiffs refer at one point to a statutory 20-day post-election deadline for election officials to complete their canvassing activities (*see* Doc 2-1 at 13, citing A.R.S. § 16-642)—which suggests any TRO would need to be entered by November 26 in order to be effective—Plaintiffs also contend that, even if some of the election officials have already certified their election results, the Court would have the power to order them to "file corrected returns" after considering the disputed ballots (*see* Doc 2 at 5). Furthermore, it has been suggested that the Arizona Secretary of State will not certify the final election results until December 3. Clarification on this issue will be helpful in determining the duration of any briefing and hearing schedule that may be set on the TRO request.

…

…

…

---

[1] Specifically, it appears that most of Plaintiffs' claims under the Voting Rights Act (*i.e.,* claims about the provision of translators and early-voting sites) arise from pre-election conduct, whereas Plaintiffs' Fourteenth Amendment claim (*i.e.,* county election officials employed disparate post-election methods for allowing voters to cure ballots with mismatched or missing signatures) seems to arise from post-election conduct.

Accordingly, the Court will set a hearing for **Monday, November 26, 2018, at 10:00 a.m**. The parties should be prepared the address the issues identified above. Counsel for Plaintiffs shall provide notice of this hearing to all parties and their counsel and shall also complete service of the complaint, TRO request, and all attachments thereto by the close of business on **Wednesday, November 21, 2018**.

Dated this 21st day of November, 2018.

Dominic W. Lanza
United States District Judge