BRAD CARLYON
Navajo County Attorney

Jason S. Moore
Deputy County Attorney
P.O. Box 668
Holbrook, AZ  86025
jason.moore@navajocountyaz.gov
(928) 524-4026
State Bar No. 019911
*Attorneys for Doris Clark and Rayleen Richards*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **The Navajo Nation, a federally recognized Indian Tribe; Joyce Nez, an individual; Ashley Atene Sr., an individual, Irene Roy, an individual; Bonnie Tsosie, an individual; and Dale Smith, an individual,**<br><br>Plaintiffs,<br><br>vs.<br><br>**Michele Regan, in her official capacity as Secretary of State for the State of Arizona; Edison J. Wauneka, in his official capacity as Apache County Recorder; Angela Romero, in her official capacity as Apache County Elections Director; Doris Clark in her official capacity as Navajo County Recorder, Rayleen Richards, in her official capacity as Coconino County Elections Director; and Patty Hansen, in her official capacity as Coconino County Recorder.,**<br><br>Defendants. | Case No. 3:18-cv-08329-DWL<br><br>**NAVAJO COUNTY RECORDER DORIS CLARK AND NAVAJO COUNTY ELECTION DIRECTOR RAYLEEN RICHARDS RESPONSE TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

Deputy County Attorney Jason S. Moore, of the Navajo County Attorney's Office, on behalf of Defendants Navajo County Recorder Doris Clark and Navajo County Elections

Director, Rayleen Richards, hereby respond to the Motion for Temporary Restraining Order. Both Ms. Clark and Ms. Richards ask this Court to deny the Plaintiffs' Motion for an Emergency Temporary Restraining Order.

The Court could easily be confused about the relief Plaintiffs request. Plaintiffs spend a considerable amount of time discussing in their Memorandum in support of a temporary restraining order a plethora issues which are not directly germane to the restraining order they seek. Given the anticipated limited amount of time to respond to the Plaintiffs motion, in deference to the Court's limited time, Navajo County Defendants choose to ignore the non-emergent issues that do not immediately need the Court's attention, and instead focus on the uncounted early mail-in ballots that were disqualified by all three counties and how they should be handled.

The relief Plaintiffs request is quite narrow where the three involved County Recorders are concerned. Plaintiffs ask that the County Recorders be issued a restraining order by this Court prohibiting them, "from finalizing the counting of votes" until Navajo voters who submitted disqualified early mail-in ballots have had an opportunity to "cure" those defects which led to the disqualification. In terms of a defect, the Plaintiffs mean one of two things. They mean either (1) that an early mail-in ballot was returned completely unsigned by the voter, or (2) that after review at the Recorder's Office, the signature on the early mail-in ballot was found not to match the signature on the voter's registration card. The issues of Navajo language translators, early polling or registration sites are not immediately before the Court and do not need to be addressed on any type of emergency basis.

There are any number of reasons the Court could and should deny the Plaintiffs' request for a restraining order.

**1.) <u>Navajo County Defendants Have Already Made Diligent Efforts to "Cure" Mismatched Signature Ballots</u>**

As discussed in the Affidavit of County Recorder and Navajo tribal member Doris Clark, which is submitted concurrently herewith, Navajo County already has a long-standing policy in

place allowing all voters, Native American and non-native alike, to "cure" early mail-in ballots with mismatching signatures so long as the ballot is received prior to 7:00 p.m. on election night. If the signatures do not match, the County Recorder's Office contacts the voter by phone and makes attempts to verify the signature. The idea is to make all votes count if there is a way to verify the signature. *See Affidavit of Doris Clark*, ¶ 8. As Ms. Clark makes clear in her affidavit, the problem of mismatching signatures is relatively uncommon, but there are many valid reasons a signature can change over time. *Id., ¶ 10*.

Despite Navajo County's longstanding policy of attempting to verify mismatched signatures after 7:00 p.m. on election night, as the Plaintiffs are very aware, Navajo County, as well as Coconino and Apache County, were made parties to the recently decided Maricopa County Superior Court Case, Maricopa County Republican Party v. Reagan, CV-2018-013963. That case concerned whether a "cure" period was appropriate for early mail-in ballots for the November 6, 2018 election, and, if so, what exact cure period was appropriate. *Id., ¶ 13*. In that case, each of the Defendant Recorders was ultimately ordered by the Maricopa County Superior Court to make "good-faith" efforts to contact voters whose early ballots they deem "facially deficient" through Wednesday, November 14, 2018. The purpose of that Order was to permit voters to "cure" defective early ballots and establish a uniform guideline for the "cure" period. *Id., ¶ 14*. There is no dispute, nor do the Plaintiffs allege, that any of the three named County Recorders failed to do comply with the Court's Order. As demonstrated by the Affidavit of Doris Clark, submitted concurrently herewith, diligent good faith efforts were made to contact the voters who submitted early mail-in ballots with signatures that did not match the signature of the voter registration card on file. This opportunity to "cure" ballots was offered to voters on and off the Navajo Nation Reservation on equal terms. *Id., ¶ 8*. As such, there was no equal protection violation.

There simply is no reason for this Court to believe, nor have the Plaintiffs demonstrated, that any further efforts to contact the voters would be any more successful than the efforts already made. The Plaintiffs, to the extent they request relief to extend the cure period for these ballots, are simply asking the Court to double-down on the Order already made by the Maricopa County

Superior Court and fulfilled by the County Recorders.  The request is superfluous, unnecessary, and should be summarily rejected by this Court.

**2.) <u>Arizona Law Does Not Permit a Cure Period for Early Main-In Ballots that Lack a Signature on The Ballot Affidavit</u>**

Navajo County's policy is to allow a cure of a mail-in ballot received without a signature on the ballot affidavit so long as it is possible to do so prior to 7:00 p.m. on election night.  When Navajo County receives a ballot and there is time to cure the lack of signature defect, the voter is contacted by the Recorder's Office, and advised that they have choices.  First, the Recorder's Office can spoil the ballot at the voter's request and the voter can be sent another early ballot to vote if time permits.  Alternatively, the voter can choose to show up at an early voting site (of which Navajo County offers several both on and off the Navajo reservation) or on election day to vote.  The choice is that of the voter.  *Affidavit of Doris Clark, ¶ 11*.  This policy is applied in a uniform manner to voters both on and off the Navajo Reservation.  *Id., ¶ 16*.

Navajo County's policy of giving the voter another chance to make their vote count, even when they forget to their signature on the ballot envelope, is remarkably similar to that of Maricopa County, which Plaintiffs try to hold up to this Court as an example of what Navajo County should be doing.  Plaintiffs seriously mislead this Court however, by trying to imply there is any meaningful difference in policy between the two counties, and that Navajo voters are not being given the same opportunities available to voters in Maricopa County or elsewhere in Arizona.  Plaintiffs ignore that the Maricopa County's website does not address what happens if there is insufficient time to send the ballot back and forth in the mail prior to 7:00 p.m. on election day.  Curiously, Plaintiffs offer absolutely no evidence that it is the policy of the Maricopa County Recorder's Office to "cure" no signature ballots after 7:00 p.m. on election night.  Maricopa County Recorder's website is clear that early ballots must be signed and must be received by 7:00 p.m.  See: https://recorder.maricopa.gov/site/faq.aspx

Mail-in ballots received by the Recorder's office with no signature and too late to cure them prior to the 7:00 p.m. deadline on election night are problematic.  There is no time to send the

voter a new ballot and it is too late for them to vote at a polling place.[1]  After the entry of Maricopa County's Order regarding a cure period for "facially deficient" ballots, the Navajo County Recorder was initially uncertain whether the language of the Superior Court's Order applied only to ballots with mismatched signatures or whether it might also apply to early mail-in ballots she received that contained no signature from the voter on the ballot affidavit.  The reason for this was that the order did not define the term "facially deficient." *Affidavit of Doris Clark, ¶ 15.* After consideration however, and after checking with several other Arizona counties and learning of *no other counties in Arizona that were allowing ballots with missing signatures on ballot affidavits to be "cured,"* the Navajo County Recorder concluded that allowing the "cure" of unsigned mail-in ballots was inappropriate.  *Id., ¶ 16*. reason for this lies in specific statutory language found in A.R.S. §§ 16-548 and 16-550.

A.R.S. § 16-548(A) provides as follows:

> A. The early voter shall make and sign the affidavit and shall then mark his ballot in such a manner that his vote cannot be seen.  The early voter shall fold the ballot, if a paper ballot, so as to conceal the vote and deposit the voted ballot in the envelope provided for that purpose, which shall be securely sealed and, together with the affidavit, delivered or mailed to the county recorder or other officer in charge of elections of the political subdivision in which the elector is registered or deposited by the voter or the voter's agent at any polling place in the county.  In order to be counted and valid, the ballot must be received by the county recorder or other officer in charge of elections or deposited at any polling place in the county no later than 7:00 p.m. on election day.

In turn, A.R.S. § 16-550(A) provides that:

> A. Upon receipt of the envelope containing the early ballot and the completed affidavit, the county recorder or other officer in charge of elections shall compare the signatures thereon with the signature of the elector on his registration form. If satisfied that the signatures correspond, the

---

[1] The voter from Kayenta, whom allegedly turned in an early mail-in ballot without a signature at the polling place on election day and was told he did not need to sign falls squarely into this category.  While the facts if as alleged by the voter are true are unfortunate, the reality is that poll workers do make mistakes, both on and off the reservation.  One story about a single voter does not indicate a systemic problem and does not come close to establishing an equal protection claim.

5

> recorder or other officer in charge of elections shall hold them
> unopened in accordance with the rules of the secretary of state.

The requirements of A.R.S. § 16-548(A) are very specific in outlining the responsibilities of the voter. All early mail-in ballots must be completed, including a signed affidavit, and arrive at the County Recorder's office by 7:00 p.m. on election day. If the ballot is not completed with a signature on the affidavit, the County Recorder has no signature to compare to the voter's registration card. The ballot cannot be counted because it was not submitted in a complete manner by 7:00 p.m. on election day. This is in unique contrast to mail-in ballots with mismatched signatures, which were submitted in a complete manner.

The Navajo County Recorder has not allowed the "cure" of any early main-in ballot not containing a signature on the ballot affidavit if it was not submitted prior to 7:00 p.m. on the day of the election. *Affidavit of Doris Clark, ¶ 18*. The law has been applied uniformly by the Navajo County Recorder to voters on and of the Navajo Reservation alike. Neither the Navajo Nation nor any individual Navajo elector can demonstrate any special or unique harm to them as a group that occurs to them because of an unequal application of the law. Neither can Plaintiffs demonstrate a 14th amendment violation, or a violation of Section II of the Voting Rights Act. In fact, the Plaintiffs apparently seek to create a 14th amendment violation. Were the Plaintiffs granted what they ask for in a restraining order . . . ***Navajo voters, and Navajo voters alone*** . . . to be extended an extra "cure period" for mismatched signatures, and the ability to cure ballots containing no signature at all, it would create a massive equal protection clause problem that would be utterly indefensible. Navajo voters in Apache, Coconino, and Navajo County would be treated differently than any other voters in those counties—including Native Americans for other tribal groups, including the Hopi and White Mountain Apache. They would also be receiving treatment different from every other voting group in the entire State of Arizona. How can some voters be offered an extra opportunity to cure their ballots if the same opportunity to cure ballots is not extended to all voters? Simply put, the Plaintiffs position is inherently fraught with legal difficulties that cannot be overcome.

In Navajo County, there are a total of fourteen mail-in ballots received without signatures that could not be cured. Of those ballots, only four were from voters residing on the Navajo Nation. Two were from voters residing on the White Mountain Apache Reservation. The eight other ballots were all from voters residing off reservations. *Affidavit of Doris Clark, ¶ 19*. Based on these numbers, there is little or no reason to think that Navajo or Native American voters were any more likely than any other voter to forget to sign their ballot affidavit. Although the sample size of fourteen is admittedly small, the breakdown is roughly in line with the 2000 U.S. census, which showed that Native Americans constituted 43.4% of Navajo County's population.[2]

If the Plaintiffs were serious about establishing either an equal protection claim or a claim under the Voting Rights Act (VRA), the Plaintiffs would be required to demonstrate that voters off the Navajo Reservation in Apache, Coconino, or Navajo County, or elsewhere in Arizona, were allowed to cure their ballot when a similarly situated Navajo voter was not allowed the same privilege. Plaintiffs have not alleged even once instance of that occurring, much less shown a pattern, policy, or practice of systematically treating Navajo voters differently from any other voters. Instead, Plaintiffs discuss only Navajo voters who had mismatched signature ballots or no signature ballots that were not counted. What they conveniently fail to share with the Court are the total number of off-reservation ballots that were rejected county wide across the three counties for the same reasons. The reason for ignoring the salient issue is obvious . . . if those numbers were discussed, it would likely reveal that Navajo voters are being treated on an equal basis with non-Navajo voters just as they are in Navajo County.

**3.) This Court Lacks Jurisdiction Over Necessary Parties**

*a.) Plaintiffs Failed To Join The Boards of Supervisors*

---

[2] https://en.wikipedia.org/wiki/Navajo_County,_Arizona#Demographics

Under A.R.S. § 16-642, the "governing body holding an election" is required to conduct a canvass, "not less than six days nor more than twenty days following the election." Under A.R.S. § 11-251(3) and the provisions of Title 16, it is the Navajo County Board of Supervisors that is the governing body ultimately responsible for holding the election in Navajo County, not the County Recorder or the County Elections Director. As the Court is aware, the election was held on November 6, 2018. The last day available for the Board of Supervisors to canvass the election would be November 26, 2018.

The Navajo County Recorder has already finished counting the ballots in this matter. Pursuant to A.R.S. § 16-642, the election results were canvassed and approved by the Navajo County Board of Supervisors on November 16, 2018. Pursuant to A.R.S. § 16-646, the canvass was certified, mailed, and sent electronically to the Arizona Secretary of State's Office. Neither the Navajo County Recorder, nor the Navajo County Elections Director, the parties before this Court, have any statutory authority to "uncanvass" the election once the canvass has been completed by the Board of Supervisors. Nor does this Court have jurisdiction over the Board of Supervisors. None of the three relevant Boards of Supervisors are parties to this action. Simply put, the Court does not have the necessary parties before it to grant any relief the Plaintiffs ask for in their request for a restraining order.

Upon information and belief, Apache County and Coconino County have also finished counting their votes, and the Boards of Supervisors in both of those counties canvassed the vote on November 20, 2018.[3] Simply put, the Complaint filed in this matter is too late in the game as the Recorders and Election Directors no longer have the "ball in their court."

### b.) *Plaintiffs Failed to Join All Fifteen Counties*

Plaintiffs want ballots from Navajo voters residing in the three Defendant counties to be given an extra period of time to cure defective signatures. They additionally want Navajo voters to be able to "cure" ballots that were submitted without signatures. Although Plaintiffs have

---

[3] See the Coconino County website at: http://www.coconino.az.gov/AgendaCenter/Board-of-Supervisors-Agendas-Minutes-and-5  See the Apache County website at: https://www.co.apache.az.us/events/event/bos-agenda-11-20-18/

failed to demonstrate any right to that relief, the only way the Court could even entertain the idea without creating an equal protection problem under the 14th amendment would be to extend that right not only to both Navajo and non-Navajo voters in Apache, Coconino, and Navajo counties, <u>but to all voters throughout the State</u>. If elections laws are going to be applied in a uniform manner, they must be applied equally to all voters. That necessarily means that the County Recorders, County Election Directors, and the Boards of Supervisors of all fifteen counties would need to be joined in this case, and be required to do the same things the Court would require of Apache, Coconino, and Navajo County.

## **CONCLUSION**

The Plaintiffs have failed in showing any likelihood of success on the merits as required by Rule 65(b). The laws, policies, and procedures the Navajo Nation complains of are being applied on an equal basis by the Navajo County Recorder to all voters in Navajo County with respect to both classes of mail-in ballots at issue here (mismatched and no signature ballots). In fact, what Plaintiffs complain of is the fact that the Navajo County Recorder is in fact applying the law on the reservation in the same manner as other Recorders throughout the State of Arizona. It is most likely the same story with Navajo County's sister counties, Coconino and Apache. The fact of the matter is that the relief the Plaintiffs seek in asking for a restraining order/temporary injunction does not solve an equal protection problem under the 14th amendment . . . it creates one instead. The Plaintiffs have not established a claim under the VRA for very similar reasons.

Plaintiffs also cannot show irreparable harm. Plaintiffs fail to allege how a single election in any federal, state, or local matter in Navajo County would be impacted by the uncounted deficient ballots. Simply put, this matter is moot to the outcome of the election, which has already been certified by the Board of Supervisors.

Neither the balance of the equities nor the public interest lies on the side of the Plaintiffs either. Allowing voters on the Navajo Nation more time than any other voters in the state to cure mismatched signatures, or to cure unsigned ballots, as the Plaintiffs suggest, cannot in any way be considered equitable to anyone. It offends even the most basic sense of justice. As the

Plaintiffs point out, the Supreme Court has specifically held that a State may not value certain voters over others. See *Bush v. Gore*, 531 U.S. 98, 104-105 (2000). But that is exactly what the Plaintiffs ask this court to do.

Finally, the Plaintiffs have simply sued the wrong parties and sued them too late. The ballots have already been counted by the Recorders and Elections Directors. Their job is done. To have the canvass reopened, the Plaintiffs would have to sue the Boards of Supervisors. They failed to do so. Accordingly, the Court has no jurisdiction to grant the relief Plaintiffs request.

RESPECTFULLY SUBMITTED this 25th day of November 2018.

/s/ Jason S. Moore              .
Jason S. Moore
Deputy County Attorney

I hereby certify that the foregoing
Document was electronically served
Electronically this 25th
day November, 2018 upon

Patty A. Ferguson-Bohnee
Judith Dworkin
Joe W. Keene
SACKS TIERNEY, P.A.
Attorneys for Plaintiffs
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3963
Patty.Ferguson@SacksTierney.com
Judith.Dworkin@sackstierney.com
Joe.Keene@sackstierney.com
(480) 425-2600

Ethel B. Branch
Paul Spruhan
Navajo Nation Department of Justice
Attorneys for Plaintiffs
P.O. Drawer 2010
Window Rock, AZ 86515
ebranch@nndoj.org

pspruhan@nndog.org
(928) 871-6210


Joseph LaRue
Arizona Attorney General's Office
2005 N. Central Ave.
Phoenix, AZ 85004
Joseph.larue@azag.gov
*Attorney for Michele Reagan, Arizona Secretary of State*


Rose Winkeler
Coconino County Attorney's Office
110 E. Cherry Ave.
Flagstaff, AZ 86001
rwinkeler@coconino.az.gov
*Attorneys for Coconino County Defendants*

Joseph Young
Apache County Attorney's Office
P.O. Box 337
St. Johns, AZ 85936
JYoung@apachelaw.net
*Attorneys for Apache County Defendants*


By:  Jason S. Moore  .