1   Patty A. Ferguson-Bohnee (AZ 020996)
    Patty.Ferguson@SacksTierney.com
2   Judith M. Dworkin (AZ 010849)
    Judith.Dworkin@SacksTierney.com
3   Joe W. Keene (AZ 032623)
    Joe.Keene@sackstierney.com
4   SACKS TIERNEY P.A.
    4250 N. Drinkwater Blvd., 4th Floor
5   Scottsdale, AZ 85251-3693
    Telephone:  480.425.2600
6
    Ethel B. Branch (AZ 026717)
7   ebranch@nndoj.org
    Paul Spruhan (NM 02513)
8   pspruhan@nndoj.org
    Navajo Nation Dept. of Justice
9   P.O. Drawer 2010
    Window Rock, Arizona 86515
10  Telephone: (928) 871-6210
    Facsimile: (928) 871-6177
11  Attorneys for Plaintiffs

12              IN THE UNITED STATES DISTRICT COURT

13                  FOR THE DISTRICT OF ARIZONA

14

15

16  The Navajo Nation, a federally recognized        No.  CV-18-08329-PCT-DWL
    Indian Tribe; Joyce Nez, an individual; Denise
17  Johnson, an individual; Ashley Atene, Sr., an    **FIRST AMENDED VERIFIED
    individual; Irene Roy, an individual; Bonnie     COMPLAINT FOR INJUNCTIVE
18  Tsosie, an individual; and Dale Smith an         AND DECLARATORY RELIEF**
    individual,
19
                    Plaintiffs,
20
            v.
21
    Michele Reagan, in her official capacity as
22  Secretary of State for the State of Arizona;
    Edison J. Wauneka, in his official capacity as
23  Apache County Recorder; Angela Romero in
    her official capacity as Apache County
24  Elections Director; the Apache County Board
    of Supervisors, a body politic; Alton Joe
25  Shepherd, in his official capacity as a
    Chairman of the Apache County Board of
26  Supervisors; Doris Clark in her official
    capacity as Navajo County Recorder, Rayleen
27  Richards, in her official capacity as Navajo
    County Elections Director; the Navajo County
28  Board of Supervisors, a body politic; Jesse

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Thompson, in his official capacity as a Chairman of the Navajo County Board of Supervisors;  Mark Mayrand in his official capacity as Coconino County Elections Director; Patty Hansen, in her official capacity as Coconino County Recorder; and the Coconino County Board of Supervisors, a body politic; Art Babbott, in his official capacity as a Chairman of the Coconino Board of Supervisors.

Defendants.

## A.    <u>NATURE OF THE CASE</u>

1.    "There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1440-41 (2014). The Supreme Court has recognized that "voting is of the most fundamental significance under our constitutional structure" and the right to an effective vote is protected by the Equal Protection Clause of the Fourteenth Amendment. *See Burdick v. Takushi*, 504 U.S. 428, 433-44 (1992).  Indeed, the right to vote is the "fundamental political right . . . preservative of all rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886)).

2.    Voters who fail to sign an early ballot affidavit are not given the same opportunity to cure the deficiency as voters whose early ballot has a mismatched signature and voters who fail to provide ID on Election Day.  All voters should have the same opportunity to cure ballot deficiencies in order to have their ballots counted.

3.    In the November 6, 2018 General Election, over 100 votes cast by members of the Navajo Nation (the "Tribal Members") residing in the Counties of Apache, Navajo, and Coconino (the "Counties") were not counted, because they did not sign the envelope containing the early ballot or because the signatures on the envelopes did not match.  Over seventy percent (70%) of the voting age population on the Navajo Indian Reservation ("Reservation") speak a language other than English.  Upon information and belief, no translators were provided to these individuals, and this failure resulted in the Tribal Members' inability to read and understand the instructions for casting an early ballot.  The

2287832.v1

**SACKS TIERNEY** P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Counties implemented different standards for curing early ballots. Arizona procedures provide that mismatched signatures on early ballot affidavits can be cured, but are silent as to unsigned early ballot affidavits. The Counties do not provide the same opportunity for voters to cure unsigned ballot affidavits as it does for mismatched signatures on ballot affidavits. This disparate treatment has been found to be unconstitutional by a federal court.[1] Furthermore, federal courts have also held that the lack of notice and an opportunity to cure a ballot is unconstitutional because it violates a person's procedural due process rights.[2] The Counties' treatment of unsigned early ballots effectively denied voters the right to vote because they neither received notice nor an opportunity to cure.

4.     The 2014 Election Procedures Manual ("Election Manual"), the manual in effect during the 2018 election, allows county recorders to contact voters to help cure a mismatched signature. The Election Manual provides that the county recorder "may attempt to contact the voter to ascertain whether the voter actually voted the early ballot and any reasons why the signatures don't match," but only "[i]f time permits." Ariz. Sec'y of State, Election Procedures Manual, 166 (2014). Voters who fail to sign their ballot affidavits are not contacted and have no opportunity to cure their defects. The Election Manual is silent on these ballots. These voters are left without recourse, and their votes are simply not counted.

5.     Indeed, in *Maricopa County Republican Party v. Reagan*, twelve of the fifteen Arizona counties stipulated that they all have different standards for allowing voters to cure unsigned ballot affidavits or early ballots with mismatched signatures.[3] The ability to cure ballot issues varies among the counties. This inconsistency impacts the right to vote.

---

[1] *See Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *1 (N.D. Fla. Oct. 16, 2016) ("The issue in this case is whether Florida's statutory scheme, which provides an opportunity to cure no-signature ballots yet denies that same opportunity for mismatched-signature ballots, is legally tenable. The answer is a resounding 'no.'").

[2] *See e.g. Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990); *Saucedo v. Gardner*, No. 17-CV-183-LM, 2018 WL 3862704, at *15 (D.N.H. Aug. 14, 2018); *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *10 (N.D. Ill. Mar. 13, 2006).

[3] Parties' Joint Stipulated Factual Statement, CV 2018-013963 (Maricopa County Sup. Ct., Nov. 8, 2019).

6. Maricopa County Superior Court Judge Margaret Mahoney issued an order requiring county recorders to permit voters to cure early ballots until 5:00 PM on November 14, 2018.[4] *See* Superior Court Order, attached as Exhibit 1. The Order defined "cure" to mean "the same governmental acts taken prior to the general election to allow a voter to confirm their early ballot vote." Thus, if the signature on the voter registration does not match that on the sealed envelope, all counties in the State of Arizona allowed voters to fix, or cure, the signature up to five (5) business days after Election Day. This concession did not apply to voters who failed to sign the affidavit on their early ballot envelopes.

7. Navajo County initially stated that it would allow voters to cure their unsigned ballot affidavits, and then it stated it would not allow voters to cure the ballot affidavits.[5]

8. Apache County did not allow voters who lacked signatures to cure their ballots. They allegedly allowed voters with mismatched signatures to cure ballots. However, Apache County was closed on November 9, 2018, one of the business days provided for curing ballots.

9. Coconino County allowed voters with mismatched signatures to cure their ballots but did not allow voters with unsigned ballots to cure the ballot deficiency.

10. Maricopa County, the most populated county in the State of Arizona, allowed voters to cure unsigned ballot affidavits.[6]

11. The signature on a voter's early ballot is considered a voter's identification ("ID").

12. Voters who fail to present ID when voting in person on Election Day have five (5) business days after a federal election to return to the county recorder's office or another

---

[4] *Maricopa County Republican Party v. Reagan*, CV 2018-013963 (Maricopa County Sup. Ct., Nov. 9, 2019).

[5] *Maricopa County Republican Party v. Regan*, Parties' Joint Stipulated Factual Statement ¶7, CV 2018-013963 (Maricopa County Sup. Ct., Nov. 8, 2019).

[6] Maricopa County Recorder's Website, FAQ 12 *available at* *https://recorder.maricopa.gov/site/faq.aspx.*

4

2287832.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

designated location to bring ID and have their ballot counted.

13.    Voters who participate in early voting and fail to sign their ballot affidavit do not have the same opportunity to cure their voting deficiency as voters who fail to present ID on Election Day.

14.    The Navajo Nation requested that the Counties establish additional voter registration and early voting sites on the Reservation to assist Tribal Members with the electoral process.  For various and unsubstantiated reasons, the Counties denied the Nation's request.  The inadequate early voting sites resulted in Tribal Members making mistakes on their ballots.  Poll workers at an early voting site could have identified and corrected the signature issues.

15.    The lack of in-person voter registration sites on the Reservation results in inequality of access to voter registration for Tribal Members.

16.    Defendants' failure to establish additional in-person voter registration sites and early voting sites on the Reservation, provide translators for early voting, and allow additional time during which Tribal Members could cure their ballot inadequacies had, and will continue to have, a significant disparate impact on the Navajo Nation's Tribal Members' voting power.  It will also deny them their voting rights and abridges their ability to participate in elections.  Plaintiffs allege that this failure to act, if allowed, would reinforce a "history of official racial discrimination in voting."

17.    Ballot translations in the Navajo language are only provided orally.  Instructions on how to complete an early ballot in the Navajo language are only provided orally.  Upon information and belief, there were no oral instructions provided to Navajo voters who received early ballots by mail.  Navajo language speakers did not have an equal opportunity to participate in early voting opportunities.

18.    If the State and Counties' action and inaction is allowed to continue, the ability of these Tribal Members to effectively participate in the political process will be hindered.

19.    Plaintiffs seek declaratory and injunctive relief, compelling the Defendants to (a) allow early voters who do not sign their ballot affidavit to have the same opportunity to cure

5

the ballot deficiency that is provided to voters with a mismatched signature, (b) allow early voters who do not sign their ballot affidavit to have the same chance to cure their ballot as voters who vote by conditional provisional ballots, (c) provide translators certified as proficient in the Navajo language for all future early voting and election-day polling sites, (d) provide translation of instructions for casting an early ballot in Navajo over the radio for the 30 days leading up to an election, (e) establish additional in-person voter registration sites, and (f) establish additional early voting sites on the Reservation for all future elections that are open for consistent hours (at a minimum, each Monday through Friday from 8 a.m. until 6 p.m. with no interruption during the lunch hour) during the 30 days leading up to the election. This relief is sought on the grounds that failure to provide the requested relief is a denial of the equal right to vote.

20.   Failing to establish this relief will result in Navajo Nation citizens having less opportunity than non-Navajo citizens to participate in the political process.

21.   Accordingly, Plaintiffs ask this Court to grant them declaratory and injunctive relief set forth in Paragraph 19.

## B.   <u>AUTHORITY</u>

22.   This action is brought by the Plaintiffs pursuant to Sections 2, 4(f)(4) and 203 of the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301 *et seq.* (formerly codified at 42 U.S.C. 1973); 42 U.S.C. § 1983, providing for civil action for deprivation of rights; the Fourteenth Amendment to the United States Constitution; the First Amendment of the United States Constitution, 28 U.S.C. §§ 2201-2202 providing for declaratory relief and other necessary or proper relief; and Article 2, Section 21 of the Constitution of the State of Arizona.[7] This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear claims under the Constitution and laws of the State of Arizona.

---

[7] Article 1, Section 21. <u>Free and equal elections</u>. All elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

## C.    JURISDICTION AND VENUE

23.    This case arises under the Constitution and laws of the United States. This Court has original jurisdiction over this matter under 52 U.S.C. § 10301(a) and (b); 42 U.S.C. § 1983; 28 U.S.C. §1362; 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3) and (4); and 28 U.S.C. § 2201 and 2202, along with Article III of the United States Constitution.

24.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

25.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because this action is predicated upon a federal question and a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in this District.

## D.    PARTIES

26.    Plaintiff Navajo Nation is a federally recognized Indian Tribe with a government-to-government relationship with the United States.  The Navajo Reservation was established by the Treaty of 1868 and was thereafter expanded by successive executive orders.  The Reservation consists of approximately 27,000 square miles of sovereign territory.  The Reservation is located in Apache, Navajo, and Coconino counties in Arizona, and 8 counties in Utah and New Mexico. According to the 2010 census, the population of the Reservation is 173,667 of whom 101,835 live on the Arizona portion of the Reservation. The Navajo Nation has a voting age population of 67,252 living within the Arizona portion of the Reservation.

27.    The Navajo Nation has associational standing to bring this lawsuit. Navajo Nation Tribal Members would have standing to sue in their individual capacities for the allegations set forth in the Complaint.  The Navajo Nation helps to coordinate voter outreach and voter education on the Reservation.  The Navajo Nation Election Administration reviews and approves Navajo language translations used by the Counties for use on Reservation precincts. The translations include radio and print announcements, ballots, audio tapes, other election material, and poll working training materials. The Nation also asserts the right to bring this claim on behalf of its members *parens patriae*.

28.    The Navajo Nation has a strong and demonstrated interest in ensuring its

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

members are able to exercise their right to vote on Election Day.  If Navajo Nation members are unable to vote, the collective power and voice of the Navajo Nation is reduced.  The Navajo Nation advocates on behalf of all its members to local, state, and federal representatives.  If some of its members are unable to vote, the Navajo Nation's overall ability to advocate effectively for critical resources for the Navajo Nation is jeopardized.

29.  Plaintiff, Joyce Nez, is a resident of Chinle, Arizona, an Arizona elector in Apache County, and an enrolled Tribal Member.  Ms. Nez is a citizen of Arizona and is registered to vote in local, state, and national elections in Arizona.  Ms. Nez lives on the Reservation.  Ms. Nez voted by mail during the 2018 General Election and believed that her ballot was counted.  However, Ms. Nez's ballot was not counted for failure to complete the ballot affidavit form.  Ms. Nez does not recall being informed that she must complete a ballot affidavit form, and she was not given an opportunity to cure her ballot deficiency.  Ms. Nez is a Navajo language speaker.  *See* Joyce Nez Declaration attached as Exhibit 2.

30.  Plaintiff Ashley Atene, Sr. is a resident of Kayenta, Arizona, located on the Navajo Indian Reservation in Navajo County, Arizona.  Mr. Atene is an enrolled member of the Navajo Nation and is registered to vote in local, state, and national elections in Arizona.  Mr. Atene attempted to vote in the 2018 General Election.  He obtained an early ballot and returned it to the Kayenta polling place on Election Day.  Mr. Atene asked at the polling location if he needed to sign his ballot, and the poll worker told him that he did not need to sign his ballot.  Mr. Atene left the polling location believing that his ballot would be counted.  However, his ballot was not counted for failure to sign the ballot affidavit.  He was not given an opportunity to cure his ballot deficiency.  Mr. Atene is a Navajo language speaker.  *See* Ashley Atene, Sr. Declaration attached as Exhibit  3.

31.  Plaintiff Dale Smith is a resident of Kayenta, Arizona, located on the Navajo Indian Reservation in Navajo County, Arizona.  Mr. Smith is an enrolled member of the Navajo Nation.  He does not believe he is registered to vote in Arizona elections.  Mr. Smith does not believe he has the same access to voter registration and early voting as other citizens who live in Navajo County.  Mr. Smith would have to travel approximately 350 miles

roundtrip to Holbrook to register to vote or participate in early voting outside of the ten hours of early voting offered by Navajo County in Kayenta during the 2018 General Election. *See* Dale Smith Declaration attached as Exhibit 4.

32.  Plaintiff Denise Johnson is an enrolled member of the Navajo Nation living on the Navajo Indian Reservation in Apache County, and she is a fluent Navajo language speaker. Ms. Johnson is not registered to vote and believes it is a financial burden to participate in voting. *See* Denise Johnson Declaration attached as Exhibit 5.

33.  Plaintiff Irene Roy is an enrolled member of the Navajo Nation and an Arizona elector in Apache County. Ms. Roy is a citizen of Arizona and is registered to vote in local, state, and national elections in Arizona. Ms. Roy is a fluent Navajo language speaker. Ms. Roy lives on a dirt road in Sweetwater on the Navajo Indian Reservation. Ms. Roy does not receive mail at her home and has no car. She receives mail 35 miles from her home, and can only obtain mail during limited times. It would be a financial burden for Ms. Roy to travel to St. Johns (198 miles one way), Fort Defiance (100 miles one way), or Chinle (66 miles one way) to participate in in-person early voting. *See* Irene Roy Declaration attached as Exhibit 6.

34.  Plaintiff Bonnie Tsosie is an enrolled member of the Navajo Nation. She lives in Sweetwater on the Navajo Indian Reservation on an unpaved road, 15 miles from a paved road. Ms. Tsosie does not receive mail at her home and must travel 35 miles to receive her mail. She has attempted to register to vote unsuccessfully in the past. *See* Bonnie Tsosie Declaration attached as Exhibit 7.

35.  The Plaintiffs desire to participate in the electoral and political processes of Arizona on an equal basis with non-Navajo voters.

36.  Defendant Secretary of State Michele Reagan is the chief elections officer in the state, and is responsible for supervising and issuing directives concerning the conduct of all elections in the state. A.R.S. § 16-142. Her duties include certifying the results of the elections. A.R.S. § 16-648. She is sued in her official capacity.

37.  Defendant Edison J. Wauneka is the Recorder for Apache County and is sued in

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

9

his official capacity.

38.  Defendant Doris Clark is the Recorder for Navajo County and is sued in her official capacity.

39.  Defendant Patty Hansen is the Recorder for Coconino County and is sued in her official capacity.

40.  Defendant Mark Mayrand is sued in his official capacity as the Elections Administrator for Coconino County.  He is in charge of conducting elections in Coconino County.

41.  Defendant Angela Romero is sued in her official capacity as the Elections Director for Apache County, Arizona. She is in charge of coordinating and administering elections in Apache County.

42.  Defendant Rayleen Richards is sued in her official capacity as the Elections Director for Navajo County, Arizona. She is in charge of conducting elections in Navajo County.

43.  Defendant Navajo County Board of Supervisors is the duly elected governing body of Navajo County, a body politic, organized and existing under the laws of the State of Arizona.  The Board of Supervisors is charged with the overall responsibility of the county election process, except for those functions designated by law to other elected officials. The Board of Supervisors may appoint an officer in charge of all functions the board does not direct personally. The officer in charge of elections shall be vested with the delegated authority of the board and is responsible directly to the board for actions taken on its behalf.

44.  Defendant Jesse Thompson is sued in his official capacity as a Chairman of the Navajo County Board of Supervisors. Defendant Thompson is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times.

45.  Defendant Apache County Board of Supervisors is the duly elected governing body of Apache County, a body politic, organized and existing under the laws of the State of Arizona. The Board of Supervisors is charged with the overall responsibility of the county election process, except for those functions designated by law to other elected officials. The

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

10

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Board of Supervisors may appoint an officer in charge of all functions the board does not direct personally. The officer in charge of elections shall be vested with the delegated authority of the board and is responsible directly to the board for actions taken on its behalf.

46. Defendant Alton Joe Shepherd is sued in his official capacity as a Chairman of the Apache County Board of Supervisors. Defendant Shepherd is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times.

47. Defendant Coconino County Board of Supervisors is the duly elected governing body of Coconino County, a body politic, organized and existing under the laws of the State of Arizona. The Board of Supervisors is charged with the overall responsibility of the county election process, except for those functions designated by law to other elected officials. The Board of Supervisors may appoint an officer in charge of all functions the board does not direct personally. The officer in charge of elections shall be vested with the delegated authority of the board and is responsible directly to the board for actions taken on its behalf.

48. Defendant Art Babbott is sued in his official capacity as a Chairman of the Coconino County Board of Supervisors. Defendant Babbott is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times.

## E.  APPLICABLE LAW

49. Article 2, Section 21 of the Constitution of the State of Arizona provides that "[a]ll elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

50. Section 203 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10503(c) ("Section 203") provides:

> Whenever any State or political subdivision subject to the prohibition of subsection (b) of this section provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language.

51. Section 2 of the VRA, 52 U.S.C. § 10301(a), provides that no voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed

11

2287832.v1

or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color.

52.  Section 4(f)(4) of the VRA, 52 U.S.C. § 10303(f)(4), provides in relevant part:

Whenever any State of political subdivision [subject to the bilingual electoral requirements] . . . provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable language minority group as well as in the English language.

53.  A.R.S. § 16-541 provides that "[a]ny election called pursuant to the laws of this state shall provide for early voting. Any qualified elector may vote by early ballot."

54.  A.R.S. § 16-542 (A) provides as follows:

Within ninety-three days before any election called pursuant to the laws of this state, an elector may make a verbal or signed request to the county recorder, or other officer in charge of elections for the applicable political subdivision of this state in whose jurisdiction the elector is registered to vote, for an official early ballot. In addition to name and address, the requesting elector shall provide the date of birth and state or country of birth or other information that if compared to the voter registration information on file would confirm the identity of the elector. If the request indicates that the elector needs a primary election ballot and a general election ballot, the county recorder or other officer in charge of elections shall honor the request.

55.  A.R.S. § 16-542 (A) provides that "[t]he county recorder may also establish any other early voting locations in the county the recorder deems necessary."

56.  A.R.S. § 16-246 provides that "[t]he county recorder or other officer in charge of elections may establish on-site early voting locations at the office of the county recorder or at other locations in the county deemed necessary or appropriate by the recorder."

57.  A.R.S. § 16-547(A) provides in relevant part:

The early ballot shall be accompanied by an envelope bearing on the front the name, official title and post office address of the recorder or other officer in charge of elections and on the other side a printed affidavit in substantially the following form:

I declare the following under penalty of perjury: I am a registered voter in _____ county Arizona, I have not voted and will not vote in this election in any other county or state, I understand that knowingly voting more than once in any

2287832.v1

election is a class 5 felony and I voted the enclosed ballot and signed this affidavit personally unless noted below.

58.   A.R.S. § 16-547(C) provides that "[t]he county recorder or other officer in charge of elections shall supply printed instructions to early voters that direct them to sign the affidavit, mark the ballot and return both in the enclosed self-addressed envelope that complies with section 16-545."

59.   A.R.S. § 16-547(C) provides that the instructions shall include the following statement:

> In order to be valid and counted, the ballot and affidavit must be delivered to the office of the county recorder or other officer in charge of elections or may be deposited at any polling place in the county no later than 7:00 p.m. on election day.

60.   A.R.S. § 16-548(A) provides as follows:

> The early voter shall make and sign the affidavit and shall then mark his ballot in such a manner that his vote cannot be seen.  The early voter shall fold the ballot, if a paper ballot, so as to conceal the vote and deposit the voted ballot in the envelope provided for that purpose, which shall be securely sealed and, together with the affidavit, delivered or mailed to the county recorder or other officer in charge of elections of the political subdivision in which the elector is registered or deposited by the voter or the voter's agent at any polling place in the county.  In order to be counted and valid, the ballot must be received by the county recorder or other officer in charge of elections or deposited at any polling place in the county no later than 7:00 p.m. on election day.

61.   A.R.S. § 16-550 mandates that "[u]pon receipt of the envelope containing the early ballot and the completed affidavit, the county recorder or other officer in charge of elections shall compare the signatures thereon with the signature of the elector on his registration form."

62.   The Election Manual provides that "[t]he County Recorder or other officer in charge of elections shall supply printed instructions both in English and Spanish to early voters that direct them to sign the affidavit, mark the ballot and return both in the enclosed self-addressed envelope."[8]

_____

[8] Office of the Secretary of State, State of Arizona Election Procedures Manual at 58 (2014).

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

63.    The Election Manual also provides how the voter must mark and return the early

ballot:

> After voting the early ballot in accordance with the instructions provided by the County Recorder, the voter must: complete and sign the affidavit, place the voted ballot in the envelope provided for that purpose, · securely seal it, deliver or mail the envelope to the appropriate County Recorder or officer in charge of elections, or deposit it at any polling place within the county of residence no later than 7:00 p.m. on election day, in order to be counted as valid.[9]

64.    The Election Manual delineates the responsibilities of the Recorder as follows:

> The County Recorder or officer in charge of elections shall:
>
> - compare the signatures on the affidavit on every early ballot affidavit envelope with every elector's signature on the registration form.
> - if **satisfied** that the signatures were made by the same person, the County Recorder or officer in charge of elections shall:
>   - place a distinguishing mark on the unopened affidavit envelope to indicate that the signature is sufficient,
>   - hold the early ballot in the unopened affidavit envelope,
>   - deliver them to the early ballot board.
> - if not satisfied that the signatures were made by the same person, the County Recorder or officer in charge of elections shall:
>   - make a reasonable and meaningful attempt to contact the early voter[,]
>   - place a distinguishing mark on the unopened affidavit envelope to indicate that the signatures are insufficient,
>   - separate these envelopes from the "sufficient" ballot envelopes, and hold them separately from the "sufficient" ballots,
>   - hold these ballot envelopes until delivered to the early ballot board.
>
> If it is determined that the voter was sent an incorrect ballot and there is sufficient time to mail a new ballot and receive the correct voted ballot back from the voter, the Recorder shall issue a corrected ballot.[10]

65.    If an election official encounters a mismatched signature, and makes an initial

---

[9] Election Manual at 59.
[10] *Id*. at 59-60.

determination that the signatures on the ballot affidavit and the voter's registration do not match, the Election Manual states that the County Recorder "if time permits, may attempt to contact the voter to ascertain whether the voter actually voted the early ballot and any reasons why the signatures may not match."[11]

66. The Election Manual is silent on whether an election official can contact a voter whose ballot affidavit is not signed.

67. Individuals returning or depositing early ballots are not required to show identification.[12] Their signature is equivalent to showing physical identification for verification of the voter's identification.

68. Conditional provisional ballots are issued to voters who vote in person at the polls and do not present ID as follows:

> If the elector does not provide identification as required by ARS § 16-579(A), the elector shall be issued a conditional provisional ballot. The conditional provisional ballot shall be placed in a provisional ballot envelope. The provisional ballot envelope shall indicate that the elector did not provide identification. The poll worker shall notify the elector that he or she must provide identification as required by ARS § 16-579(A) to the County Recorder or to an official deemed acceptable by the County Recorder. The poll worker shall provide the elector with instructions on how, when, and where the elector can provide proof of identification. The proof of identification must be received by the County Recorder's office by 5:00 p.m. on the fifth business day after a general election that includes an election for a federal office or 5:00 p.m. on the third business day after any other election for the provisional ballot to be processed and counted.[13]

69. Ballots are rejected if the affidavit on the envelope is insufficient, or the registrant is not a qualified elector of the voting precinct or district.[14]

## F. VOTING IN ARIZONA

70. Voting in Arizona is conducted by early in-person voting, early voting by mail, and traditional, in-person voting at polling places on Election Day. Arizona voters need no

---

[11] *Id.* at 166.

[12] *Id.* at 150.
[13] *Id.* at 153.
[14] *Id.* at 168.

2287832.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

excuse to vote early and Arizona permits early voting both in person and by mail during the 27 days before an election.  A.R.S. § 16-541.

71.  For those voters who prefer to vote early and in-person, all Arizona counties operate at least one in person early voting location.  Some of these locations are open on Saturdays.

72.  Arizona has allowed early voting by mail for over 25 years, and it has since become the most popular method of voting, accounting for approximately eighty percent (80%) of all ballots cast in the 2016 election.

73.  In 2007, Arizona implemented permanent no-excuse early voting by mail, known as the Permanent Early Voter List ("PEVL").  Arizonans now may vote early by mail either by requesting an early ballot on an election-by-election basis, or by joining the PEVL, in which case they will be sent an early ballot as a matter of course no later than the first day of the 27-day early voting period.  A.R.S. §§ 16-542-544.

74.  To be counted, an early ballot must be received by the county recorder by 7:00 p.m. on Election Day.  A.R.S. § 16-548(A).

75.  Early ballots contain instructions that inform voters of the 7:00 p.m. deadline. Voters may return their early ballots by mail postage-free, but they must mail them early enough to ensure that they are received by this deadline.

76.  Additionally, some Arizona counties provide special drop boxes for early ballots, and voters in all counties may return their early ballots in person at any polling place, vote center, or authorized election official's office without waiting in line.

77.  In an Advisory Memorandum of the Arizona Advisory Committee to the U.S. Commission on Civil Rights (July 2018), it was noted that there has been substantial closure of polling locations across the State.  Election officials justified these closures due to a decrease in demand because of an increase in early voting preference; cost pressures associated with maintaining polling locations and voting equipment; and fewer locations willing to serve as polling locations because of increased liability, lack of security, lack of compliance with the Americans with Disabilities Act (ADA), and insurance concerns.

16

## G.   ARIZONA COUNTIES ALL USE DIFFERENT STANDARDS

78.   As put forth in a stipulation in the case of *Maricopa County Republican Party v. Reagan*, twelve of the fifteen Arizona counties stipulated that they all have different standards for allowing voters to cure early ballots with mismatched signatures. *See Stipulation*, attached as Exhibit 8. An agreement was made to provide that all voters in Arizona to have until November 13, 2018 to cure mismatched signatures on early ballot affidavits.   The agreement did not include a similar opportunity to cure unsigned early ballots.

## H.   POVERTY OF THE NAVAJO NATION

79.   The Navajo Nation is the largest reservation in the United States and is located within the states of Arizona, New Mexico, and Utah.[15]

80.   The poverty rate on the Reservation is thirty-eight (38%), twice the poverty rate in the State of Arizona.[16]

81.   The median household income on the Navajo Nation's Reservation is $27,389 "which is approximately half that of the State of Arizona."[17]   Thirty-two percent (32%) of the population lives below the poverty level.[18]   Only seven percent (7%) of the Tribal membership have obtained a college degree.[19]

## I.   BACKGROUND OF DISCRIMINATION

82.   In addition to the depressed socio-economic status of Indians in Navajo country, there is a long history of racial discrimination against Indians in Arizona.

83.   Prior to 1924, Indians were denied citizenship and the right to vote based on the

---

[15] navajobusiness.com/FastFacts/Overview.htm
[16] Ariz. Rural Policy Institute, Demographic Analysis of the Navajo Nation Using 2010 Census and 2010 American Community Survey estimates at 34, available at https://gotr.azgovernor.gov/sites/default/files/navajo_nation_0.pdf.
[17] *Id.* at 29.
[18] *Id.*
[19] *Id.* at 57.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

underlying trust relationship between the federal government and the tribes and on their status as citizens of their tribes. Indians could only become citizens through naturalization "by or under some treaty or statute."[20]

84. It was not until Congress passed the Indian Citizenship Act of 1924 that all Indians were granted United States citizenship.[21] Enactment of the 1924 Act ended the period in United States history in which United States citizenship of Indians was conditioned on severance of tribal ties and renunciation of tribal citizenship and assimilation into the dominant culture.[22]

85. Notwithstanding the passage of the Indian Citizenship Act, states continued to discriminate against Indians by denying them the right to vote in state and federal elections through poll taxes, literacy tests, and intimidation.[23]

86. Even after 1924, Arizona Indians were prohibited from participating in elections. The Arizona Supreme Court upheld the prohibition finding that Indians living on reservations could not vote because they were wards of the federal government and, as such were "persons under guardianship" and were thereby prohibited from voting in Arizona.[24]

87. Reservation Indians in Arizona did not achieve the right to vote in state elections until 1948 when the Arizona Supreme Court overturned the *Porter v. Hall* decision.[25]

88. The State of Arizona continued its discrimination through its imposition of English literacy tests which were not repealed until 1972.[26] Only those Indians who could read the United States Constitution in English and write their names were eligible to vote in

---

[20] *Elk v. Wilkins*, 112 U.S. 94, 103 (1884).
[21] An Act of June 2, 1924, 43 Stat. 253, Pub. L. 175 (1924) (codified as amended at 8 U.S.C. § 1401(b)).
[22] COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, § 14.01[3], n. 42-44. (2005 Ed.)
[23] Continuing Need for Section 203's Provision for Limited English Proficient Voters: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 309 (2006) (letter from Joe Garcia, NCAI).
[24] *Porter v. Hall*, 34 Ariz. 308, 331-332, 271 P. 411, 419 (Ariz. 1928).
[25] *Harrison v. Laveen*, 67 Ariz. 337, 196 P.2d 456 (Ariz. 1948) (holding that Indians living on Indian reservations should in all respects be allowed the right to vote).
[26] *See* ARIZ. REV. STAT. ANN. § 16-101(A)(4)-(5) (1956); Voting Rights Act: Evidence of Continued Need, Vol. I: Hearing Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary, 109th Cong. 1372 (2006) (appendix to the statement of Wade Henderson).

state elections.

89.    The enactment of the VRA included a temporary prohibition of literacy tests in covered jurisdictions. Apache County, Arizona was included in the original list of jurisdictions covered by Section 5 of the VRA.[27]

90.    On November 19, 1965, Navajo and Coconino Counties also became covered by Section 5.[28]

91.    Because of this coverage, the Arizona literacy tests were suspended in each of these three counties.

92.    In 1966, these three Counties became the first jurisdictions to successfully bail out from coverage under Section 5 after the U.S. District Court for the District of Columbia held that Arizona's literacy test had not been discriminatorily applied against Indians in the preceding five years.[29]

93.    When the VRA was amended in 1970, it included a nationwide ban on literacy tests, which again preempted the operation of Arizona's literacy tests.[30]  Arizona became one of the states to unsuccessfully challenge the ban on literacy tests. In upholding the ban and striking down literacy tests, the Supreme Court noted that Arizona had "a serious problem of deficient voter registration among Indians."[31]  The Court recognized that non-English speakers may make use of resources in their native languages in order to responsibly and knowledgeably cast a ballot.[32]

94.    The VRA amendments of 1970 included, as one of the measures of voting discrimination, registration and turnout in the 1968 presidential election. As a result, Apache, Coconino and Navajo Counties again became covered by Section 5 along with five (5) other

---

[27]Determination of the Attorney General Pursuant to Section 4(b)(1) of the Voting Rights Act of 1965, 30 Fed. Reg. 9897 (Aug. 7, 1965).

[28] Determination of the Director Pursuant to Section 4(b)(2) of the Voting Rights Act of 1965, 30 Fed. Reg. 14505 (Nov. 19, 1965).

[29]*Apache County v. United States*, 256 F. Supp. 903, 910911 (D.D.C. 1966).

[30]The Voting Rights Act, 42 U.S.C. § 1973aa (1970) (current version at 42 U.S.C. § 1973b (2008)).

[31] *Oregon v. Mitchell*, 400 U.S. 112, 117, 132, 153 (1970).

[32] 400 U.S. *Id.* at 146.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Arizona counties.

95.    Even after 1970, there were a number of challenges to Indians' right to vote and to hold office. Many of these cases challenged activities in Apache County, one of only a few counties within the United States in which the predominant languages spoken are American Indian. Of these languages, the most commonly used is Navajo, a historically unwritten language.[33]

96.    The Arizona Supreme Court quashed a permanent injunction by the lower court against the seating of Tom Shirley, a Navajo Indian living on the Navajo Reservation, who had been elected to the Apache County Board of Supervisors.[34] The Arizona Court reaffirmed the right of Indians to vote, vacated the injunction and directed the Apache County Board of Supervisors to certify Shirley as the elected supervisor from District 3.[35]

97.    Apache County also discriminated against Indian voters by racially gerrymandering the districts for the three seats on the County's Board of Supervisors. In the early 1970's, Apache County District 3 had a population of 26,700 of whom 23,600 were Indian, while District 1 had a population of 1,700 of whom only 70 were Indian and District 2 had a population of 3,900 of whom only 300 were Indian. Several Indian voters challenged Apache County for violating the one-person, one-vote rule.[36]  Apache County claimed that Indians are not citizens of the United States and the Indian Citizenship Act granting them citizenship was unconstitutional.[37]  The federal court rejected the County's arguments, noted that the County must be redistricted in accordance with one-person, one-vote standards and

---

[33] Considering the Navajo Reservation as a whole, including parts of the States of Arizona, New Mexico and Utah, over one-third of the voting age citizens on the Navajo Nation Reservation are limited-English proficient and over one-quarter are illiterate. Voting Rights Act: Evidence of Continued Need, Vol. I: Hearing Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary, 109th Cong. 1403-1404 (2006) (appendix to the statement of Wade Henderson).
[34] *Shirley v. Superior Court for Apache County*, 109 Ariz. 510, 516, 513 P.2d 939, 945 (Ariz. 1973).
[35] *Id*. at 516, 513 P.2d at 945.
[36] *Goodluck v. Apache County*, 417 F. Supp. 13, 14 (D. Ariz. 1975), aff'd, 429 U.S. 876 (1976).
[37] 417 F. Supp. at 14.

2287832.v1

granted plaintiff's motion for summary judgment.[38]

98.   In 1976, Apache County attempted to avoid integration of its public schools to include Indian students by holding a special bond election to fund a new school in the almost entirely non-Indian southern part of the county. Although the special election affected Indian students who would be denied equal schooling, Indian turnout for the election was abnormally low. Investigation demonstrated that the low turnout was a result of the closing of nearly half of the polling places on the reservation, the total lack of language assistance, the absence of Navajo language informational meetings regarding the bond election and the use of English-only in the implementation of absentee voting procedures.[39]

99.   In 1988, the United States filed a complaint to enforce Sections 2 and 4(f)(4) of the VRA.  The complaint alleged that various election standards, practices, and procedures by the State of Arizona, the Apache County Board of Supervisors and Navajo County Board of Supervisors unlawfully denied or abridged the voting rights of Navajo citizens residing in Apache and Navajo counties.  The challenged practices included discriminatory voter registration, use of absentee ballots, and voter registration cancellation procedures, as well as failure to implement effective bilingual election procedures, including the effective dissemination of election information in Navajo and providing for a sufficient number of adequately trained bilingual persons to serve as Navajo translators on election day.  This litigation ended in a Consent Decree, which established the Navajo Language Election Information Program required the counties to employ two full-time bilingual outreach workers and to agree to a number of changes to increase voter registration and the dissemination of election procedures.[40]

100. Six Arizona counties are subject to Section 203 for Indian languages: Apache, Coconino, Gila, Graham, Navajo, and Pinal and must provide all election materials, including

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

---

[38] 417 F. Supp. at 16.
[39] *Apache County High School No. 90 v. United States*, No. 77-1815 (D.D.C. June 12, 1980).
[40] *U.S. v. Arizona*, Consent Decree, CIV 88-1989 (May 22, 1989).

21

2287832.v1

assistance and ballots, in the language of the applicable language minority group.[41] This includes the Navajo language in Apache, Coconino, and Navajo Counties.

101. Over seventy percent (70%) of the households on the Navajo Reservation speak a language other than English, and over eighteen percent (18%) of individuals over the age of five speak English less than very well.[42]

102. Current voting practices utilized in Arizona discriminate against the Navajo Nation's Tribal Members. Navajo voters have less access than other voters to in-person voter registration sites. Navajo voters have less opportunity than other voters to participate in early voting. Upon information and belief, no Navajo translators are provided to give guidance to the Tribal Members in the preparation of their early ballots. The Election Manual only requires that instructions be given in English and Spanish. Considering over one-third of the voting age citizens on the Reservation are limited-English proficient and over one-quarter are illiterate, this failure to provide translators ha a significant disparate impact on the Navajo Nation's Tribal Members' voting power, denied them their voting rights and was an apparent effort to dilute their voting strength. Second, the counties refused to provide additional early voting sites on the Reservation which would have allowed workers at such sites to provide guidance to Navajo voters who do not use the English language in completing their early ballots. Finally, over 100 votes cast by members of the Navajo Nation were disqualified because they failed to sign the envelope containing the ballot or the signature did not match. Voters that failed to include other data on their early ballots were allowed until November 14, 2018, to correct their errors. This concession did not cover the Tribal Members who properly filled out the ballot but failed to sign the envelope.

103. Voting in and around Indian reservations and communities is, to a significant extent, racially polarized.

---

[41] Voting Rights Act Amendments of 2006, Determinations under Section 203, 81 See. Reg. 87532, 87533 (Dec. 5, 2016).
[42] Ariz. Rural Policy Institute, Demographic Analysis of the Navajo Nation Using 2010 Census and 2010 American Community Survey estimates at 59, *available at* https://gotr.azgovernor.gov/sites/default/files/navajo_nation_0.pdf.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

22

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

104. There have been no Native Americans elected to the national offices from Arizona or to the offices of Governor, Attorney General, or Secretary of State, four representatives to the 90-seat state legislature are Native American, and the extent to which tribal members have been elected to other State elected offices and offices of the political subdivisions in and around Indian reservations and communities is significantly disproportionate or minimal in relation to the percentage of tribal members in the total population of the state and political subdivisions in and around Indian reservations and communities.

**J. FACTUAL BACKGROUND ON DENIAL OF ADDITIONAL IN-PERSON VOTER REGISTRATION AND IN-PERSON EARLY VOTING SITES BY THE COUNTIES**

105. On August 8, 2018, Russell Begaye, President of the Navajo Nation, sent requests for additional voter registration sites and early voting sites to the recorders of Apache, Coconino and Navajo Counties. *See* Exhibits 9, 10, and 11. He informed the respective recorders that the Nation would help recruit Navajo Tribal Members to staff the locations and assist in obtaining HAVA funds for its operations. *Id*. He asked that they respond by August 17, 2018, so that the Navajo Nation could assist the counties. *Id*. These requests were cc:ed to the Secretary of State, Michelle Regan.

106. On August 20, 2018, Defendant Patty Hansen sent a memorandum to President Begaye denying his request for additional early voting sites. *See* Exhibit 12. She claims that Coconino County recently entered into a settlement agreement with the Department of Justice that requires all early voting sites established after the effective date of the agreement be handicapped accessible. The Agreement would allow the County to use current non-compliant facilities for the 2018 elections but prohibited them from establishing any new non-compliant facilities. Id. The County did agree to accept assistance from the Navajo Nation in obtaining additional Help America Vote Act ("HAVA") funding. *Id*.

107. On August 23, 2018, Defendant Secretary of State notified President Begaye that Coconino County Recorder's statement that the Secretary of State would not make HAVA funding available to enhance their election security was incorrect. Secretary Regan also

2287832.v1

indicated that the State had $5 million dollars in HAVA funding that had not yet been distributed. *See* Exhibit 13.

108. On September 10, 2018, Defendant Doris Clark notified the Navajo Nation that its request for additional early voting sites on the Reservation was denied, because of the County's interest in ballot security. *See* Exhibit 14.

109. The decision to determine whether and if to establish temporary and permanent voter registration and polling places is statutorily left to the discretion of the individual county recorders.

110. Coconino County is the largest county in the State of Arizona at 18,661 square miles. Over 7,000 square miles (approximately 39%) are on tribal land, approximately 12.9% is privately-owned land, and the remainder is owned by the state and federal governments.[43]

111. Apache County is the third largest county in the State of Arizona at 11,218 square miles. Fifty percent of the land in Apache County is tribal land, seventeen percent is privately-owned land, while the remainder is owned by the state and federal governments. *Sheperd v. Platt*, 865 P.2d 107 (Ariz. App. 1993).

112. Navajo County is the fourth largest county in the State of Arizona at 9,959 square miles. Sixty-six percent of the land base is tribal land, approximately eighteen percent is privately-owned land, and the remainder is owned by the state and federal governments. .

113. Navajo voters had limited access to in-person early voting during the 2018 election. *See* Coconino County early voting sites, attached as Exhibit 15; Apache County early voting sites, attached as Exhibit 16; Navajo County early voting sites, attached as Exhibit 14.

114. Navajo voters must travel great distances to register to vote. Tribal identification/enrollment numbers are acceptable forms of proof of citizenship for proof of

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

---

[43] Coconino County, Coconino County Land Ownership, *available at* http://www.coconino.az.gov/DocumentCenter/View/923/County-Land-Composition-2-reduced?bidId=.

2287832.v1

registration. There is limited access to broadband on the Navajo Reservation.[44] However, the online voter registration process does not allow the use of Tribal identification numbers to complete the online voter registration process.

## K.  CLAIMS

115. Navajo Nation Tribal Members bear the effects of discrimination on the basis of race and tribal status in education, housing, employment, and health services which have resulted in a lower socioeconomic status which hinders their ability to participate effectively in the political process.

116. Over seventy percent (70%) of households on the Reservation speak a language other than English, and when translators are not provided by the Counties, this hinders the ability of these Tribal Members to participate effectively in the political process. The requisite language translations are not provided to Navajo language voters under Section 203 and Section 4(f)(4) of the Voting Rights Act.

117. Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, in relevant part, states that it is a violation of the Voting Rights Act, if,

> based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected… in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

Thus, Section 2 of the Voting Rights Act, as amended, protects Indians from voting practices which have a disparate impact on their right to vote.

118. The crux of Plaintiffs' § 2 claim is that Tribal Members have less opportunity than other Arizona citizens to participate in the political process by exercising their voting franchise.

119. Many Navajo citizens have nontraditional addresses and do not receive mail at their homes. Most Navajo citizens living on the Navajo Reservation must travel to obtain

---

[44] Federal Communications Commission, National Broadband Map, Navajo Nation, *available at* https://www.broadbandmap.gov/summarize/native-nations/navajo-nation.

2287832.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

their mail.

120. There are over 14,000 miles of roads on the Navajo Reservation. Seventy-six percent of the roads on the Navajo Reservation are unpaved dirt roads.

121. Transportation to post office locations, early voting locations, and voter registration locations is challenging for many Navajo voting age citizens.

122. The lack of in-person early voting and in-person voter registration imposes a discriminatory burden on Navajo voters, a protected class. This burden is "caused by or linked to 'social and historical conditions' that have or currently produce discrimination against members of the protected class.'" *Husted*, 768 F.3d at 554.

123. Additionally, Arizona's current voting procedures violate the Constitution. The Election Manual, which allows voters to cure ballots that have a mismatched signature on early ballots or no ID on Election Day but does not allow ballots to be cured where the voter fails to sign their early ballot affidavit, cannot stand. This current practice of allowing some voters to cure their ballots but not others has been ruled unconstitutional by courts.[45] Furthermore, the lack of notice and an opportunity to contest the denial of a ballot violates Plaintiffs' procedural due process rights. Federal courts have struck down laws like Arizona's which deny a voter an opportunity to correct their ballot.[46] Indeed, this Court held in 1990 that Arizona's absentee ballot process was unlawful because of "the absence of any procedure which furnishes post-deprivation notice to an individual whose absentee ballot has been disallowed, advising the individual of the disqualification and the reason therefore, and providing some means for the individual to make his or her position on the issue a matter of

---

[45] *See Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *1 (N.D. Fla. Oct. 16, 2016) ("The issue in this case is whether Florida's statutory scheme, which provides an opportunity to cure no-signature ballots yet denies that same opportunity for mismatched-signature ballots, is legally tenable. The answer is a resounding 'no.'").

[46] *See e.g. Saucedo v. Gardner,* No. 17-CV-183-LM, 2018 WL 3862704, at *15 (D.N.H. Aug. 14, 2018); *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *10 (N.D. Ill. Mar. 13, 2006).

2287832.v1

record before the appropriate election official." *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990).

124. As shown by Plaintiff Ms. Nez, Ms. Nez's early ballot was not counted during the 2018 Election because she had failed to complete the ballot affidavit form. Ms. Nez was never notified that her ballot had a problem, thus she was not allowed to cure her ballot. *See* Joyce Nez Declaration attached as Exhibit 2. Plaintiff Atene was at a polling station and asked if he had to sign his ballot, and the poll worker told him no. *See* Ashley Atene, Sr., Declaration attached as Exhibit 3. Mr. Atene left the polling station thinking his ballot was counted and was not given an opportunity to cure his ballot. Had these voters had mismatched signatures, they should been contacted by Defendants and had an opportunity to cure their respective ballots.

125. The State and Counties have no legitimate, nor compelling interest in treating ballots differently. Arizona should allow all voters to cure their ballots whether the ballot has a mismatched signature or an unsigned affidavit. The legitimate interests of the Defendants will not be undermined if the Court grants the relief prayed for herein.

126. Plaintiffs have no adequate remedy at law.

127. Plaintiffs have suffered irreparable harm as a result of the violations complained of herein, and that harm will continue unless Defendants' failure to establish in-person voter registration and early voting sites, provide translators, and to allow voters to cure their unsigned ballots is declared unlawful and enjoined by this Court.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

#### *Arbitrary and Disparate Treatment of Voters*

128. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

129. Section 1 of the Fourteenth Amendment of the United States Constitution

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

provides: "No…State shall . . . deny to any person within its jurisdiction the equal protection of the law."

130. The Supreme Court has held that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and separate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 105 (2000).

131. Under the Equal Protection Clause, Defendants cannot utilize election practices that arbitrarily treat voters differently. The actions outlined above treat voters differently.

132. Defendants refused to give Navajo tribal members the same opportunity to cure unsigned early ballots as early voters with mismatched signatures on the ballot affidavit form. *See* Joyce Nez Declaration attached as Exhibit 2. Mismatched signatures on early ballot affidavits were authorized to be corrected by November 14, 2018 during the 2018 General Election. Failure to allow Navajo voters the same opportunity to cure their ballots violates equal protection under the law. *See Harper v. Va Bd. of Elections,* 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment.").

133. Plaintiff Navajo Nation has a strong interest in ensuring that its members have the right to vote and a strong interest in ensuring that its member be treated the same as other voters in Arizona. If Navajo Nation members are denied their fundamental right to vote, the Navajo Nation's overall ability to advocate effectively for critical resources for the Navajo Nation will be greatly diminished.

134. Furthermore, the current Arizona law framework, which denies voters an opportunity to cure an unsigned ballot envelope, but allows voters to cure a mismatched signature, violates the Equal Protection Clause of the Constitution. Federal courts have held that current practices like Arizona's are unconstitutional.[47] These laws which treat voters

---

[47] *See Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *1 (N.D. Fla. Oct. 16, 2016) ("The issue in this case is whether Florida's statutory scheme, which provides an opportunity to cure no-signature ballots yet denies that same opportunity for mismatched-signature ballots, is legally tenable. The answer is a resounding 'no.'").

2287832.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

differently do not serve any legitimate or compelling state interest and the State should treat all voters the same. The State will incur little or no burden in allowing voters to cure unsigned ballots because the State already has a notification and cure process for mismatched signature and provisional ballots.

135. Allowing voters who present no ID on Election Day the opportunity present ID to cure their ballot deficiency but not allowing voters who fail to sign their ballot affidavits the opportunity to cure their ballot deficiency violates the Equal Protection Clause.

136. Plaintiffs have suffered direct and irreparable injury by Defendants' actions of not allowing Plaintiffs to cure their ballot and by not counting Plaintiffs' votes cast in the November 2018 election. Without relief, voters who cast early ballots and fail to sign the ballot affidavit form will continue to be burdened and/or deprived of their right to vote going forward.

137. By engaging in the acts and/or omissions alleged herein, Defendants acted and continue to act under color of state law to deprive the Plaintiffs their rights that are guaranteed by the Fourteenth Amendment to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

#### *Procedural Due Process*

138. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

139. Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of … liberty … without due process of law." This due process principle protects the fundamental right to vote.

140. Plaintiffs were deprived of their right to vote by having their early ballots rejected without notice, without an opportunity to cure, and without any meaningful way to appeal

2287832.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

141. Plaintiff Navajo Nation has a strong interest in ensuring that its members' votes count, and that its members' right to vote are not diminished.

142. As a result of Defendants' actions, Plaintiffs and other votes have suffered and will continue to suffer irreparable harm—disenfranchisement.

143. Unless restrained by this Court, Defendants will continue to violate the Fourteenth Amendment by treating voters differently, namely failing to provide early voters with unsigned ballots the opportunity to cure ballots because the Election Manual is silent with regards to any treatment of unsigned early ballots.

144. By engaging in the acts/or omissions alleged herein, Defendants acted and continue to act under color of state law to deprive the Plaintiffs their rights that are guaranteed by the Fourteenth Amendment to the United States Constitution.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

#### *Undue Burden on the Right to Vote*

145. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

146. Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of … liberty … without due process of law." This due process principle protects the fundamental right to vote. If a state law imposes a severe burden on the right to vote, it must be narrowly drawn to advance a compelling state interest. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

147. Plaintiff Navajo Nation has a strong interest in ensuring that its members have an opportunity to vote, and that its members face no undue burdens in practicing their right to vote.

148. Defendants have placed an undue burden on the right to vote by not notifying

30

2287832.v1

Plaintiffs that ballots they cast would not count and not allowing Plaintiffs to cure their ballots.

149. Defendants have placed an undue burden on the right to vote by rejecting the Nation's request to establish early voting sites on the Reservation. As shown above, the Navajo Nation is a very rural area and Navajo Nation members must travel very great distances to vote. *See* Irene Roy Declaration, attached as Exhibit 6 (stating that the early voting sites range from 130 miles round trip up to 400 miles round trip); Denise Johnson Declaration, attached as Exhibit 5 (stating that it is a financial burden to vote.).

150. Voters who vote at in-person early voting locations do not have to show ID in order to cast a ballot. The voter's signature counts as the ID.

151. Voters who require language assistance do not have equal opportunity to cast an early ballot because all Navajo translations are oral.

152. Voting by mail is difficult for many Navajos because they do not receive mail at their homes and must travel to obtain their mail.

153. Navajo voters prefer to vote in person.

154. Defendants have no legitimate, non-racial reason for rejecting the Nation's request that early voting sites be established within the boundaries of the Reservation.

155. Defendants refused and continue to refuse to establish additional in-person voter registration and early voting sites within the boundaries of the Reservation.

156. Defendants have failed to provide translators at early voting sites located on the Reservation who are proficient in the Navajo language.

157. By engaging in the acts and/or omissions alleged herein, Defendants acted and continue to act under color of state law to deprive the Plaintiffs their rights that are guaranteed by the Fourteenth Amendment to the United States Constitution and Section 2 of the VRA and will continue to violate said rights absent relief granted by this Court.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF THE ARIZONA CONSTITUTION

158. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

2287832.v1

herein.

159. Article 2, Section 21, of the Arizona Constitution provides that "all elections shall be free and equal" and guarantees that "no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Article 2, Section 21 is violated when votes are not properly counted

160. Plaintiff Navajo Nation has a strong interest in ensuring that its members' rights under the Arizona Constitution are not violated and that its members can exercise the free right of suffrage.

161. The Defendants have acted under color of state law to deprive the voters of the Navajo Nation equal elections by arbitrarily failing to establish additional in-person voter registration sites, failing to establish additional in-person early voting sites on the Reservation, failing to provide translators and allowing some early voters to correct the deficiencies in their early ballots while refusing members of the Navajo Nation the same opportunity.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF THE VOTING RIGHTS ACT OF 1965**

162. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

163. Section 2 of the VRA, 52 U.S.C. § 10301, protects Plaintiffs from denial or abridgment of the right to vote on account of race, color, or membership in a language minority group. Section 2 provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color," or membership in a language minority group.  52 U.S.C. § 10301.

164. Indians are recognized as a language minority group under the VRA.  Native Americans are a protected class under the VRA.

165. The Counties are covered jurisdictions under Section 203 of the VRA for the

SACKS TIERNEY **P.A., ATTORNEYS**
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

Navajo language

166. Plaintiff Navajo Nation has a strong interest in ensuring that its members are not denied their right to vote and that its members can exercise their fundamental rights to vote.

167. Defendants' failure to establish additional in-person voter registration sites and early voting sites on the Reservation denies members of the federally-recognized Tribe, including the Plaintiffs, the same rights of other members of the electorate to participate in the political process and elect representatives of their choice, in violation of Section 2 of the VRA.

168. Defendants' failure to provide translators to members of the Navajo Nation denies Tribal Members, including the Plaintiffs, the same rights of other members of the electorate to participate in the political process and elect representatives of their choice, in violation of Section 2 of the VRA.

169. Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF THE FIRST AMENDMENT

170. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

171. Voting and participating in the electoral process is a form of speech and expression. It is the ultimate form of political speech and association and is entitled to First Amendment protection

172. Plaintiff Navajo Nation has a strong interest in ensuring that its members' speech and expression is upheld, and that its members' votes be counted.

173. The lack of curing of unsigned ballots poses insurmountable burdens on the right to vote for those Navajo voters whose ballots are not counted, because they fail to sign the ballot affidavit which contained the early ballot or because their signature does not match. These burdens violate the First Amendment.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

## **RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor as follows:

1.     That this Court assume jurisdiction;

2.     That this Court declare that all voters should be afforded due process and equal protection of the law by providing all voters an opportunity to cure ballot deficiencies.

3.     That this Court declare the Election Manual, which denies Plaintiffs the opportunity to cure an unsigned ballot is unconstitutional because it violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

4.     That this Court declare that allowing voters to cure conditional provisional ballots but not unsigned early ballots is unconstitutional because it violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

5.     That this Court declare that the Defendants' failure to provide in-person voter registration on the Reservation violates existing law, including, but not limited to, § 2 of the VRA, as amended, the Fourteenth Amendment to the United States Constitution, and the Arizona Constitution;

6.     That this Court declare that Defendants' failure to provide additional early voting sites on the Reservation violates existing law, including, but not limited to, § 2 of the VRA, as amended, the Fourteenth Amendment to the United States Constitution, and the Arizona Constitution;

7.     That this Court declare that the Defendants' failure to provide translators for early voting Tribal Members violates existing law, including, but not limited to, Section 2, Section 203, and Section 4(f)(4) of the VRA, as amended, the Fourteenth Amendment to the United States Constitution, and the Arizona Constitution;

8.     That this Court grant permanent injunctive relief by ordering Defendants to establish additional in-person voter registration and early voting sites on the Reservation in Pinon, Kayenta, Dilkon, Shonto, Ganado, Sanders, Rock Point, Teec Nos Pos, Leupp,

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

Inscription House, and Cameron for all future elections, and further relief as the interest of justice may require, such as consistent hours (e.g., Monday through Friday from 8 a.m. until 6 p.m. with no interruption during the lunch hour) during the 30 days leading up to the election;

9.  That this Court grant permanent injunctive relief by ordering Defendants to provide translators certified as proficient in the Navajo language to Tribal Members for all future early and regular elections, and further relief as the interest of justice may require, such as translation of instructions for casting an early ballot in Navajo over the radio for the 30 days leading up to an election;

10.  That this Court grant permanent injunctive relief by permanently enjoining Defendants from treating voters differently, and to order Defendants to treat all ballots alike going forward meaning that Defendants will notify and allow voters with no signature to cure their ballots like voters with mismatched signatures and Election Day voters with no ID;

11.  That this Court grant permanent injunctive relief by ordering Defendants to promulgate, adopt, and enforce uniform standards and processes in a new Election Manual that treat all voters in all counties of Arizona alike;

12.  That this Court grant plaintiffs reasonable attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. § 1973(e) and § 1988; and

13.  That this Court grant the Plaintiffs any further relief which may in the discretion of the Court be necessary and proper to ensure that the voting rights of Tribal Members are properly respected in accordance with the Orders of this Court.

DATED this 11th day of December, 2018.

SACKS TIERNEY P.A.

By: *s/ Patty A. Ferguson-Bohnee*

Patty A. Ferguson-Bohnee
Judith M. Dworkin
Joe Keene

and

Ethel B. Branch
Paul Spruhan
NAVAJO NATION DEPARTMENT OF JUSTICE

*Attorneys for the Navajo Nation*

**SACKS TIERNEY** P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2018, I electronically transmitted the foregoing VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF to the Clerk's Office using the CM/ECF System for filing.

*s/Rebecca C. Urias*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2287832.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VERIFICATION

State of Arizona     )
                      ) ss
County of Apache    )

     I, Ethel Branch, being first duly sworn upon her oath, deposes and says:

     I am Attorney General of the Navajo Nation, a Plaintiff in the above-captioned lawsuit, and as such, I am authorized to make this verification. I have read the foregoing First Amended Verified Complaint for Injunctive and Declaratory Relief and know the contents thereof are true to my own personal knowledge, except as to those matters therein stated upon information and belief, and as to those matters, I believe them to be true to the best of my knowledge, information and belief.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Ethel Branch


     SUBSCRIBED AND SWORN TO before me this 11th day of December 2018, by Ethel Branch, as Attorney General of the Navajo Nation.

_____
Notary Public

My Commission Expires: 7/14/2019

Notary Public State of Arizona
Apache County
Christine Benally
My Commission Expires 07/14/2019

2284230.v1