BRAD CARLYON
Navajo County Attorney

Jason S. Moore
Deputy County Attorney
P.O. Box 668
Holbrook, AZ  86025
jason.moore@navajocountyaz.gov
(928) 524-4026
State Bar No. 019911
*Attorneys for Navajo County Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **The Navajo Nation, a federally recognized Indian Tribe et. al.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona; et. al.,**<br><br>Defendants. | Case No. 3:18-cv-08329-DWL<br><br>**ANSWER OF DEFENDANT NAVAJO COUNTY BOARD OF SUPERVISORS AND DEFENDANTS DORIS CLARK/RAYLEEN RICHARDS** |

Defendant Navajo County Defendants Doris Clark, Rayleen Richards, and the Navajo County Board of Supervisors, in Answer to the First Amended Verified Complaint for Injunctive and Declaratory Relief, admits and denies the allegations as follows:

1.) Navajo admits the allegations contained in paragraph 1.

2.) Navajo County denies the allegations in paragraph number two.  Navajo County Defendants affirmatively alleges that voters in Navajo County who submit unsigned early ballots are given the opportunity to cure their ballots up until 7:00 p.m. on election night.  It is and has been the policy of the Navajo County Recorder's Office

to contact and inform voters who submitted unsigned early ballots of the deficiency and to give them an opportunity to cure those ballots up until 7:00 p.m. on election night. Navajo County Defendants affirmatively alleges that there is currently no statute or provision of the Arizona Secretary of State's Procedures Manual that would allow an unsigned early ballot to be cured after the closing of the polls on election night, unlike the situation involving unsigned early ballots with mismatched signatures. Navajo County Defendant also affirmatively allege that to the extent this is an issue in this case, it has already been resolved and has been mooted by the Settlement Agreement between the Navajo Nation and the Arizona Secretary of State, which contemplates a modification of the Election Procedures Manual to specifically allow for the "curing" of unsigned early ballots up to five days after the end of the election.

3.) Navajo County has insufficient information to admit or deny the allegation contained in sentence one of paragraph three, as it has no information regarding unsigned early ballots from Apache or Coconino County. Navajo County can affirmatively allege however, that in the 2018 election there were a total of fourteen unsigned early mail-in ballots received that could not be cured prior to the closing of the polls on election night. Of those ballots, only four were from voters residing on the Navajo Nation. Two were from voters residing on the White Mountain Apache Reservation. The eight other ballots were all from voters residing off reservations. There is absolutely no evidence that voters residing on the Navajo Nation fail to sign their ballots at any higher rate than voters off the reservation, and the Plaintiffs fail to cite any such evidence in their Complaint.

As to the allegation in paragraph number three implying that seventy per cent of the Navajo population speaks the Navajo language, Navajo County denies that and affirmatively alleges that while approximately fifty percent of the Navajo population speaks some Navajo, only a very small percentage of that population could be considered "proficient" at speaking Navajo, and that English is the most widely utilized and understood language by residents of the Navajo Nation.  Navajo County admits that no Navajo translators were sent to the homes of Navajos who requested early ballots to interpret the ballot for them, but affirmatively alleges that doing so would have been cost prohibitive and impossible.  Further than that, Navajo County affirmatively alleges that Navajo participation in the early ballot process broke all previous records by wide margins in the 2018 election cycle, and that there is little if any problem with Navajos who request early ballots being able to read and understand them.  As to the allegation that the Counties across Arizona applied different standards in allowing the cure of early ballots after 7:00 p.m. on election night, Navajo County denies the Plaintiffs allegations and affirmatively alleges that no Arizona County allowed the cure of an unsigned early ballot after 7:00 p.m. on election night.  Navajo County Defendants deny the balance of the allegations in paragraph number three.

4.) Navajo County admits sentences one, two and four of paragraph four of the Complaint, but denies the balance of the allegations in that paragraph.

5.) Navajo County denies the allegations contained in paragraph numbers five and six of the Complaint as the Plaintiffs mischaracterize what the Stipulation and case in Maricopa County Republican Party v. Reagan was all about.  Navajo County, as well

as Coconino and Apache County, were made parties to the recently decided Maricopa County Superior Court Case, Maricopa County Republican Party v. Reagan, CV-2018-013963. That case concerned whether a "cure" period was appropriate for early mail-in ballots for the November 6, 2018 election, and, if so, what exact cure period was appropriate. In that case, each of the Defendant Recorders stipulated and were ultimately ordered by the Maricopa County Superior Court to make "good-faith" efforts to contact voters whose early ballots they deem "*facially deficient*" through Wednesday, November 14, 2018. The purpose of that Order was to permit voters to "cure" defective early ballots and establish a uniform guideline for the "cure" period. There is no dispute, nor do the Plaintiffs allege, that any of the three named County Recorders failed to comply with the Court's Order. Diligent good faith efforts were made by Navajo County to contact all voters who submitted early mail-in ballots with signatures that did not match the signature of the voter registration card on file. This opportunity to "cure" ballots with mismatched signatures was offered to voters on and off the Navajo Nation Reservation on equal terms. Because the terms of the Order were not ultimately interpreted by any County to include unsigned early ballots, no equal protection issues arose because the Court's order was applied in a uniform way by all fifteen County Recorders in Arizona as to both voters on and off the reservation. Although the Stipulation in the earlier case was probably poorly worded, the fact is that the case involved mismatched signatures and County practices regarding mismatched signatures, not completely unsigned early ballots.

In any event, Navajo County alleges that any Complaints of the Navajo Nation in regard to unsigned early ballots in this case have been resolved by the State of Arizona's Stipulated Agreement in this matter in which the Secretary of State has agreed to amend the Elections Procedure Manual, which the Navajo County Recorder is required to follow, to allow a cure period after the closing of the polls for unsigned early ballots. Plaintiff's Complaints about unsigned early ballots have been made moot.

6.) Navajo County admits that there was initially some confusion about the term "facially deficient" in the Maricopa County Court's Order which cause some uncertainty as alleged in paragraph seven of the Complaint. However, that is ultimately irrelevant to Plaintiff's claims. For the Navajo County Recorder to have allowed for residents of the Navajo Nation to cure their unsigned early ballots, while other voters in other parts of Navajo County and the rest of the State were not afforded the same opportunity, would have created an equal protection problem rather than resolving one.

7.) Navajo County has insufficient information to admit or deny the allegations contained in paragraphs eight and nine of the Complaint as those paragraphs apply to Apache and Coconino Counties.

8.) Navajo County denies paragraph ten of the Complaint. Navajo County's policy of giving the voter another chance to make their vote count, even when they forget to sign the ballot envelope, is remarkably similar to Maricopa County, which Plaintiffs try to hold up to this Court as an example of what Navajo County should be doing. Plaintiffs seriously mislead this Court however, by trying to imply there is any meaningful difference in policy between the two counties, and that Navajo voters are

not being given the same opportunities available to voters in Maricopa County or elsewhere in Arizona. Plaintiffs ignore that the Maricopa County's website does not address what happens if there is insufficient time to send the ballot back and forth in the mail prior to 7:00 p.m. on election day or otherwise cure the ballot in that time. Curiously, Plaintiffs offer absolutely no evidence that it is the policy of the Maricopa County Recorder's Office to "cure" no signature ballots after 7:00 p.m. on election night. In fact, the Maricopa County Recorder's website is clear that early ballots must be signed and must be received by 7:00 p.m. See: https://recorder.maricopa.gov/site/faq.aspx

9.) Navajo County Defendants admit paragraphs eleven of the Complaint.

10.) Navajo County Defendants deny the allegation in paragraph twelve of the Complaint. Voters actually have until the 5th business day following a general election that includes an election for a federal office, or the 3rd business day following any election other than a general election to provide proper identification and have their ballot counted.

11.) Navajo County Defendants deny the allegations in paragraph thirteen of the Complaint. Navajo County's policy regarding the cure of an unsigned early ballot has been set forth above and is incorporated herein by reference.

12.) Navajo County denies the allegations contained in paragraphs fourteen through sixteen, accept to admit that the Navajo Nation did make a very belated and unreasonable attempt during the 2018 election cycle to request additional and/or expanded early voting.

13.) As to paragraph seventeen, Navajo County admits that Navajo is primarily an oral language, and that Navajo language translation for ballots is usually provided orally

for just that reason. The County also admits that it does not mail a translator with every early mail ballot requested by a Navajo voter. However, the "ballot by mail" process does not lend itself to mailing a translator or a recording in Navajo, and Plaintiffs suggest no rational way in which such a translation could be provided. Granted, a Navajo voter who wanted to obtain a Navajo translation could visit one of Navajo County's early voting sites on the Reservation to obtain a Navajo translation. However, doing so would defeat the purpose of mail-in ballots . . . namely convenience. If a Navajo voter is going to travel to an early voting site, he or she may as well just cast a ballot at the site as opposed to obtaining a translation, filling out their mail-in ballot, and then mailing it. To the extent Plaintiffs suggest to the Court that traveling back and forth to an early voting site to obtain a solution to a problem associated with the voting by mail, they certainly seem to miss the point of the absentee voter provisions of Arizona law. The whole point is for the voter to avoid the polling site when they choose to receive a ballot and vote it by mail.

14.) Navajo County Defendants deny the allegations in paragraph eighteen and twenty of the Complaint.

15.) Paragraph nineteen and twenty-one of the Complaint constitute requests for relief by the Plaintiffs and require no response from Navajo County as they are not assertions of fact or law.

16.) Navajo County Defendants admit paragraphs twenty-two through twenty-eight.

17.) Navajo County Defendants generally deny the allegations contained in paragraphs twenty-nine through thirty-five of the Complaint, as the allegations therein are based

on assertions about individual tribal members which Navajo County has insufficient information about in order to be able to admit or to deny.

18.) Navajo County Defendants deny paragraph thirty-six of the Complaint, as Michele Reagan was replaced as Arizona's Secretary of State after the 2018 elections by Katie Hobbs, who has been substituted as the Defendant Secretary of State in this matter. Navajo County does admit that the allegations contained in paragraph thirty-six as to Ms. Reagan would now apply to Ms. Hobbs.

19.) Navajo County Defendants admit paragraphs thirty-seven through seventy-six of the Complaint.

20.) Navajo County Defendants have insufficient information to admit or deny the allegation contained in paragraph seventy-seven of the Complaint, and therefore denies the same.

21.) Navajo County Defendants deny the allegation in paragraph seventy-eight of the Complaint as Plaintiffs misconstrue the Stipulation referenced. Navajo County affirmatively alleges that all Arizona counties were consistent in not allowing the cure of an unsigned early ballot after 7:00 p.m. on election night, which is the salient issue raised by the Plaintiffs in this case and is the basis for both their equal protection and Voting Rights Act Claims. The case referenced was more specifically about county practices regarding mismatched signatures, <u>which is not what this case is about</u>. The Stipulation is utterly irrelevant and misapplied in this context.

22.) Navajo County does not dispute that substantial rates of poverty on the Navajo Nation exist as alleged in paragraphs seventy-nine through eighty-one of the

Complaint but is unable to admit or deny the specific poverty rates referenced by Plaintiffs.

23.) Without getting into the details of each allegation individually, Navajo County does not dispute that there has been historical discrimination against tribal members or that that actions have been taken in the past that have blocked or impaired the rights of the Navajo people to vote as alleged in paragraphs eighty-two through one-hundred. To deny the history of discrimination and efforts to impair the ability of Navajo tribal members to cast a vote running from 1924 up to the Consent Decree in 1989 as alleged in the Complaint would be a fool's burden. However, Defendants affirmatively allege that the obviously discriminatory and racially motivated practices between 1924 and 1988 made in these paragraphs by Plaintiffs are not indicative of any current discriminatory practices toward the Navajo people and are instead designed to color the reader's judgment and perception about the allegations against the Defendants in the instant case.

Since the Plaintiffs ignore all history since 1989, the Navajo County Defendants will fill in the blanks for the Court regarding the thirty-year history since that time. The fact of the matter is that Navajo County has had a positive working relationship with the Navajo Nation ever since the entry of the referenced Consent Decree in 1989. Navajo County continues to follow most of the contours of the long-expired Consent Decree regarding voter registration, voter outreach, early voting sites, and advertisements on Navajo Nation radio station KTNN regarding election issues. Navajo translation is provided for the ballots both at early voting sites on the Navajo Nation and at polling sites on election day. Up until the filing of the Complaint in

this matter and the request for Temporary Restraining Order and Permanent injunction, which were facially meritless and quickly dispatched by the Plaintiff itself once it realized the deficiencies in the case, Navajo County's relationship with the Nation has been entirely positive.

24.) Navajo County Defendants deny the allegations in paragraph 101 of the Complaint, and affirmatively allege that only a small portion of individuals residing on the Navajo Nation speak only Navajo.  By far, most individuals residing on the Navajo Nation speak English rather than Navajo in their day to day lives.  One telling fact is that the elections conducted by the Navajo Nation itself for tribal office are done ***without*** the same Navajo translation that Navajo County already provides, much less the additional translation the Plaintiffs ask for in their Complaint.

25.) Navajo County Defendants deny paragraphs 102-103.

26.) Navajo County has insufficient information to admit or deny the allegations contained in paragraph 104 of the Complaint as it has done no studies of the racial backgrounds of individuals elected to state and national offices.  However, Navajo County does affirmatively allege, that three of its five-member Board of Supervisors are tribal members.  Supervisors Jesse Thompson and Lee Jack Sr. are both enrolled members of the Navajo Nation.  Supervisor Dawnafe Whitesinger is an enrolled member of the White Mountain Apache Tribe.  The County Recorder and Defendant in this matter, Doris Clark, is an enrolled member of the Navajo Nation.  It is these tribal members who oversee elections in Navajo County, and whom this action has been filed against.  The fact that this case involves the strange juxtaposition of Native Americans suing other Native Americans belies much of anything the Plaintiffs claim

about intentional suppression of the Native American vote. Quite to the contrary, the fact that these positions are held by Native Americans is proof that members of the Navajo Nation and other tribal nations in Navajo County can effectively exercise their right to vote.

27.) As to the allegations contained in paragraphs 105-108 of the Complaint, the Navajo County Defendants respond only to the allegations concerning Navajo County and admit that the County Recorder received the letter from Russell Begaye dated August 8, 2018. Navajo County affirmatively alleges that this request for the 2018 election cycle was received ***after*** early voting had already begun for the primary election on August 1, 2018. The request was received far too late in the election planning process in order to accommodate the Navajo Nation's request. Early voting sites and dates on the Navajo Nation had been budgeted for and established prior to Mr. Begaye's request. Voting had already begun for the primary a week prior. Planning an election cannot be done at the last minute, and there are several reasons the Nation's requests could not be granted, including ballot security issues, budgeting issues, polling place issues, staffing issues, etc. While Navajo County considers the Navajo Nation a partner and wants to facilitate voting on the reservation, the Nation's elected officials and/or department heads need to do their part in communicating what they believe will best serve the voters on reservation lands significantly in advance of an election in order for Navajo County to consider those requests and make an appropriate response.

28.) Navajo County denies the allegations in paragraph 109 of the Complaint.

29.) As to paragraphs 110-112 of the Complaint, Navajo County neither admits nor denies paragraphs 110 and 111 as these paragraphs apply to the Coconino and Apache County Defendants. Navajo County defendants admit the allegations in paragraph 112.

30.) As to paragraph 113, Navajo County Defendants admit that they made early voting available both on and off the Navajo Nation and deny the balance of the allegations.

31.) Navajo County Defendants deny the allegations of paragraph 114. Voter registration is readily available to Navajos who reside on the reservation through a number of avenues, including through the DMV (motor-voter registration), online avenues (while it speeds up the process, broadband internet is not a requirement of online voter registration as Plaintiffs imply), and through voter registration on the Navajo Nation that is and has been conducted through the Navajo County Recorder's Office voter outreach program since at least 1989. Further, Navajo County has historically provided voter registration forms to local chapter houses and local Department of Economic Security Offices, and Navajo tribal members can get assistance with registering to vote at those locations. Voter registration forms are also available at post offices (which Plaintiffs acknowledge many tribal members frequent) that can easily be accessed by tribal members, filled out, and then mailed to the County. Navajo County has even, in the past, trained individuals at Chapter houses to become registrars so that Navajo people can be registered right at the chapter house itself, although the willingness and ability of the various chapter houses to provide a person to provide these services has been spotty at best. In short, the

simple fact that someone lives in a remote area of the County, whether on or off the reservation, does not preclude them from registering to vote. While the County does not and can never provide service to the front door of every citizen in the County, it does the best it can with the resources it has available.

32.) Navajo County Defendants deny paragraphs 115, 116, 118, 121, 122-127 of the Complaint.

33.) Navajo County Defendants admit paragraphs 117 and 119. Navajo County Defendants have insufficient information to either admit or deny paragraph 120 of the Complaint.

34.) Navajo County Defendants admit and deny paragraph 128 as admitted and denied earlier in this Answer. Navajo County Defendants deny paragraphs 131-132 and 134-137 but admit paragraphs 129-130 and 133.

35.) Navajo County Defendants admit and deny paragraph 138 as previously admitted and denied in this Answer. Navajo County Defendants deny paragraphs 140 and 142-144 but admit paragraphs 139 and 141.

36.) Navajo County Defendants admit and deny paragraph 145 of the Complaint as previously admitted and denied above. Navajo County Defendants deny paragraphs 146 and 148-149, 151-152 and 153-157. Navajo County Defendants admit paragraphs 147 and 150. Navajo County Defendants have insufficient information to admit or deny the allegations contained in paragraph 153, as there is no way readily available way to determine the subjective preferences of "Navajo voters."

37.) Navajo County Defendants admit and deny the allegations in paragraph 158 of the Complaint as previously admitted and denied in this Answer. Navajo County

Defendants deny paragraphs 159 and 161.  Navajo County Defendants admit paragraph number 160.

38.) Navajo County Defendants admit and deny the allegations in paragraph 162 of the Complaint as previously admitted and denied in this Answer.  Navajo County Defendants deny paragraphs 167-169 of the Complaint but admit paragraphs 163-166.

39.) Navajo County Defendants admit and deny the allegations in paragraph 170 of the Complaint as previously admitted and denied in this Answer.  Navajo County Defendants have insufficient information to either admit or deny the allegation contained in paragraph number 171.  Navajo County Defendants deny the allegations contained in paragraphs 172-173.

## AFFIRMATIVE DEFENSES

Navajo County affirmatively alleges the affirmative defenses of lack of standing, estoppel, laches, and failure to join other necessary parties (namely the other twelve Arizona counties) to this action which would be required for the Plaintiffs to prove their equal protection or VRA claims.

WHEREFORE, Navajo County Defendants respectfully request that:

1.) This Court deny all claims for relief requested by the Plaintiffs, and that they take nothing from their Complaint;

2.) Any and all other relief deemed just and reasonable.

RESPECTFULLY SUBMITTED this 11TH day of September, 2019.

/s/ Jason S. Moore                .
Jason S. Moore
Deputy County Attorney

I hereby certify that the foregoing Document was electronically served Electronically this 11th day of September, 2018 upon

Patty A. Ferguson-Bohnee
Judith Dworkin
Joe W. Keene
SACKS TIERNEY, P.A.
Attorneys for Plaintiffs
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3963
Patty.Ferguson@SacksTierney.com
Judith.Dworkin@sackstierney.com
Joe.Keene@sackstierney.com
(480) 425-2600

Ethel B. Branch
Paul Spruhan
Navajo Nation Department of Justice
Attorneys for Plaintiffs
P.O. Drawer 2010
Window Rock, AZ 86515
ebranch@nndoj.org
pspruhan@nndog.org
(928) 871-6210


Joseph LaRue
Arizona Attorney General's Office
2005 N. Central Ave.
Phoenix, AZ 85004
Joseph.larue@azag.gov
*Attorney for Michele Reagan, Arizona Secretary of State*


Rose Winkeler
Coconino County Attorney's Office
110 E. Cherry Ave.
Flagstaff, AZ 86001
rwinkeler@coconino.az.gov
*Attorneys for Coconino County Defendants*

Joseph Young
Apache County Attorney's Office
P.O. Box 337
St. Johns, AZ 85936
JYoung@apachelaw.net
*Attorneys for Apache County Defendants*

By:  Jason S. Moore  .